UNITED STATES ELECTRIC LIGHTING CO. *v.* EDISON LAMP CO.

*(Circuit Court, D. New Jersey. June 20, 1892.)*

1. PATENTS FOR INVENTIONS—ANTICIPATION.
    Letters patent No. 306,980, issued October 21, 1884, to Edward Weston, for an improvement in the process of manufacturing carbon conductors for incandescent electric lamps, are void because of anticipation by patent No. 211,262, issued January 7, 1879 to William E. Sawyer and Albon Man for the same invention; the evidence of prior invention by Weston being insufficient to overcome the presumption attaching to the prior patent.
2. SAME—PRIOR PUBLIC USE.
    Independently of the question as to priority of invention, the Weston patent is invalid because of two years' public use prior to his application, by Sawyer and Man, in their workshop in New York city.

In Equity. Suit by the United States Electric Lighting Company against the Edison Lamp Company for infringement of a patent. Bill dismissed.

*Kerr & Curtis* and *Geo. H. Christie,* for complainant.
*Eaton & Lewis* and *Frederic H. Betts,* for defendant.

ACHESON, Circuit Judge. This suit is brought for the infringement of letters patent of the United States No. 306,980, dated October 21, 1884, granted to Edward Weston, upon an application filed May 27, 1881, for an improvement in the process of manufacturing carbon conductors for incandescent electric lamps. The nature of the invention is sufficiently indicated by the claim, which is as follows:

"The improvement in the art of making carbon conductors for incandescent lamps, which consists in first forming a carbon core or base, and then building up said core with carbon-obtained and deposited upon the same by and during the operation of electrically heating said core, while surrounded by or saturated with a carbonaceous substance, substantially as hereinbefore set forth."

A number of defenses to the suit have been interposed; but it seems to me to be necessary to consider only two of them, namely—*First*, the prior letters patent of the United States No. 211,262, for the same invention, dated January 7, 1879, granted to William E. Sawyer and Albon Man, upon an application filed October 15, 1878; and, *second*, the alleged public use of the invention by Sawyer & Man, and those acting under them, for more than two years before Weston's application for a patent. That the invention set forth in Weston's specification and claim was fully disclosed by Sawyer & Man in their above-recited earlier patent is clear. It is shown, also, beyond contestation, that Sawyer & Man made and perfected the invention, and actually reduced it to practical use, in the month of March, 1878. Nevertheless, the plaintiff, the assignee of Weston, asserts priority of invention and right for Weston over Sawyer & Mann; and it appears that, in an interference proceeding in the patent office between these inventors, the decision of the office was in favor of Weston upon the question of priority. The proofs in that proceeding, which were taken in the year 1882, have been brought into this case by stipulation, and some other additional evidence upon that question has been introduced.

Weston testifies that he commenced his experiments in treating carbons by electrically heating them in a carbon liquid at Newark, N. J., "some little time prior to the Centennial in 1876,"—he "cannot, however, fix the precise date,"—at his laboratory No. 194 Eighth avenue, and continued these experiments there, and afterwards, with some described modifications, at 228 Plane street, whither he removed "in the early part of 1877,"—"about the month of April, 1877;" that "soon after" his removal to Plane street, "about the month of June or July, 1877,—it may have been a little later, or possibly a little earlier, but was not very far from the date named,"—he transferred part of his apparatus, in order to have the advantage of steam power, to the basement of the shop of the Weston Dynamo-Electric Machine Company at 284 Washington street. This building had originally been a Jewish synagogue, and hence is designated by the witnesses as the "church." Mr. Weston states that, with his facilities in the "basement of the church," he there succeeded in obtaining carbons very much superior to anything he had before obtained. Upon that subject he says:

"They were extremely hard; in fact, so hard that they suggested to my mind the possibility of preparing in this way black diamonds. They were so hard and dense that I took particular pains to show them to Mr. Edward E. Quimby, and I handed him a file to test them with, and he also endeavored to scratch the glass in one of the windows in the rear end basement of the factory. Mr. Quimby was so much struck by the metallic appearance of the carbon, its density and hardness, that he asked me to give him some samples, which I did at that time, namely, about the middle of the year 1877. From that time I saw that I had overcome all trouble relating to the preparation of carbons for incandescent lamps."

Mr. Weston then describes the process which he used most, and preferred at that time. Being asked, upon his examination in chief, to state generally to what extent and under what circumstances he used

this process of preparing carbons subsequently to the year 1877, he answered:

"I have used the process more or less from that time up to the present time [*i. e.*, March, 1882] whenever I did any work on incandescent electric lighting, and I have done a great deal in this direction. After perfecting the carbons, I still found there were numerous conditions to be met in order to secure a commercially successful incandescent electric lamp, and, with this idea in view, I worked from time to time, as time and circumstances would permit, trying to overcome the other difficulties. During this time I used almost exclusively the carbons prepared by treating at a high temperature in the presence of hydro-carbon gas or oil."

Being asked upon his cross-examination how many carbons he treated after he commenced work in the basement of the church, Mr. Weston answered:

"Quite a number. I kept no record of the quantity treated. There were several dozens."

In response to the inquiry how long he continued to treat carbons in the basement of the church, he stated:

"Until the removal of my laboratory to a separate building next door to the factory. I cannot fix the date without reference to the books of the company, as I took no pains to refresh my memory in regard to this matter. My impression is, however, that it was in the early part of the following year."

He added that he could and would ascertain the exact date of the removal of his laboratory from the basement of the church to the building next door, for the company had provided him the room in the building next door, "and engaged to pay the rent." Afterwards, when his examination was resumed, Mr. Weston stated:

"I cannot fix the precise date when I moved into the laboratory next door to the church, but the first entry I can find on the books in regard to rent paid is on the 1st day of October, 1878."

Edward E. Quimby, (a solicitor of patents,) after fixing his first acquaintance with Mr. Weston as having occurred in May, 1877, testifies thus:

"Mr. Weston did describe to me his discovery that a deposit of carbon was formed upon a carbon pencil, maintained in a condition of incandescence by the passage of an electric current through it while it was surrounded by a hydro-carbon atmosphere. He brought to my office and gave me samples of such deposits, which were in small particles, but of extraordinary hardness. This communication was made to me by Mr. Weston, according to the best of my recollection, within six months of the date of my first acquaintance with him, while I was engaged in perfecting some of his older patents by reissuing them."

Mr. Quimby then states that a day or two later he visited Mr. Weston's laboratory on Washington street, in the basement of the old church, "and witnessed the operation of his method of obtaining such deposits;" and he describes the apparatus used and the operation. Upon his cross-examination, Mr. Quimby states that he has no memoranda in writing by which he can fix the date of this visit to Mr. Weston's laboratory, but says it "was during the early part of my acquaintance with him;

it was within six months of the time of my first seeing him, and was before cold weather set in." He says: "Mr. Weston moved his laboratory into the adjoining building some time after the experiments to which I have referred, and after that removal my visits to his laboratory were more frequent than before." He states he has no recollection when that removal took place. Being asked if, after the removal, he saw any incandescent electric lamps in operation in Mr. Weston's laboratory, he answered: "I cannot say. My memory is wholly at fault in the matter." And being further asked when, after the experiments he testified about, he first saw any incandescent electric lamp made by or for Mr. Weston, having an illuminating conductor of this treated carbon, Mr. Quimby answered: "It is impossible for me to say. I cannot recollect."

Levi Broadbent, who was a foreman in the employ of the Weston Dynamo Electric Machine Company from July, 1877, to September, 1879, testifies that upon one occasion, when passing through Mr. Weston's laboratory, he "saw him treating or having carbons in a globe filled with oil, and running a current of electricity through them." This, he says, occurred "between the month of July, 1877, and the 1st of January, 1878. I can't positively fix the date; it was between these points of time." He states that Weston subsequently spoke to him about the matter, "and said that the carbon that had been in the oil, and the electricity run through it, was very hard, and so that a file would not touch it." Upon his cross-examination, Mr. Broadbent testifies thus:

"*Question.* How do you know that it was previous to January 1878? **By** what circumstance do you fix on that date as being the date previous to which you saw Mr. Weston treating the carbon? *Answer.* I know it by the circumstance that Mr. Weston's new laboratory was finished in December, 1877; it was in the laboratory I saw this. *Q.* Was it in the laboratory in the basement of the church? *A.* Yes, sir; we used to call it the 'church;' it was a church once. *Q.* And you saw Mr. Weston treat these carbons in that laboratory for the first time, as I understand you? *A.* Yes, sir. *Q.* When did he move into that laboratory? *A.* I couldn't place the date exactly, but it was just after it was finished. It was in December, 1877."

The substance of the testimony by which it is sought to anticipate Sawyer & Man has been above set forth. Is the evidence, under all the circumstances, sufficient to establish a completed invention by Weston prior to March, 1878? Leaving out of view the negative testimony of the defendant's witnesses, who naturally would know something of Weston's doings, the plaintiff's own evidence impresses me as singularly vague. Did Weston's operations, as described by himself and his witnesses, amount to anything more than experiments? Could the invention here in question be derived from anything Quimby or Broadbent saw Weston do or learned from him, any more than it could have been deduced from the Despretz publication of 1849? Do the proofs convincingly show a perfected invention made by Weston in the summer of 1877, as alleged by him? Then, again, is there any reliable testimony as to the all-important matter of time? Here the plaintiff's case rests altogether upon mere recollection, which is always unreliable as respects

dates. The only date certainly fixed is October 1, 1878, when rent was paid for the premises adjoining the basement of the "church," so called. But the book entry of that payment strongly suggests that the removal of Weston's laboratory from that basement to the building next door took place, not in the early part of the year 1878, according to Weston's "impression," but late in that year; and that conclusion would shake the whole fabric of the plaintiff's case. In this connection the testimony of Broadbent, quoted above, deserves the most serious consideration; for that witness seems to testify that Weston did not go into his laboratory in the basement of the church until December, 1877.

How can Weston's assertion that from "about the middle of the year, 1877," he saw that he had "overcome all trouble relating to the preparation of carbons for incandescent lamps," be satisfactorily reconciled with his subsequent conduct,—his silence as to an invention then deemed so important, and his supineness? His great delay in applying for a patent for this process is the more extraordinary when we discover from the proofs that in the years 1878 and 1879 he took out or applied for no less than 10 patents for various other inventions. Furthermore, it is a significant fact that when Weston eventually moved, on May 27, 1881, his application for a patent was made in the interest of the plaintiff company, (which had become the owner of his inventions,) after the plaintiff had failed in its negotiations to purchase the Sawyer & Man patent, or acquire a license under the same. To overthrow the prior patent of Sawyer & Man, which had issued so early as January 7, 1879, and was immediately followed by uncommon publicity, the proof of anticipation by Weston should be, at least, positive, unequivocal, and convincing. *Cantrell* v. *Wallick*, 117 U. S. 689, 695, 6 Sup. Ct. Rep. 970; *Clark Thread Co.* v. *Willimantic Linen Co.*, 140 U. S. 481, 492, 11 Sup. Ct. Rep. 846. Taking the proofs as a whole, they fail to satisfy me that Weston's alleged invention preceded that of Sawyer & Man.

But, whatever conclusion upon the question of priority may be adopted, at any rate, under the proofs, the defense of two years' prior public use of the invention before the application for the patent in suit rests upon impregnable ground. A public use does not depend upon the number of persons to whom the use is known, and it is enough if a single device, embodying the invention, is publicly used by even one person. *Egbert* v. *Lippmann*, 104 U. S. 333. And a public use of the invention more than two years before the application for a patent, although without the consent of the inventor, invalidates the patent. *Andrews* v. *Hovey*, 123 U. S. 267, 274, 8 Sup. Ct. Rep. 101, and 124 U. S. 694, 8 Sup. Ct. Rep. 676. In March, 1878, when Sawyer & Man made the invention here in controversy, they were engaged in completing an incandescent electric lamp of their devising, which they perfected to their satisfaction and patented in June, 1878. Between March, 1878, and May, 1879, they and their assigns made a large number of these lamps, and continuously used therein for incandescent electric lighting, at their workshop in the city of New York, carbons prepared by the method described in and covered by their patent of January 7, 1879; and

during that period they there exhibited both the actual treatment of the carbons by the patented method, and the use thereof in their lamps, to large numbers of persons, besides the workmen in their employ. Clearly, this use of the invention, as shown by the proofs, was a public and practical use. It is here worthy of remark that the Scientific American, in its issue of March 8, 1879, published a clear description of the process of treating carbons as practiced by Sawyer & Man, and as set out in their patent. Whatever experiments Sawyer & Man may have made after March, 1878, concerned their lamp, with a view of increasing its efficiency and commercial value, and did not relate to the carbon treatment itself, which was perfected in March, 1878, and required no subsequent test. Now, it may be that the Sawyer & Man lamp did not prove the success the inventors supposed it to be, and that no perfect incandescent electric lamp was produced until the fall of 1880. But still, the Sawyer & Man lamp was actually operative and had some practical utility. That it was not a commercial success is not here a controlling consideration. The material fact is that the method invented and patented by Sawyer & Man for the treatment of carbons was put to successful practical use by them in their lamp. No doubt the commercial value of the invention depended much upon the production of a perfect incandescent electric lamp, but, nevertheless, the treatment of carbons by electrically heating them while surrounded by or saturated with a carbon liquid, was a distinct invention. It was an independent and valuable contribution to the general art of electric lighting. This, indeed, is the position of the plaintiff company; for it alleges that Weston made and perfected the invention as early as the summer of 1877, before a perfectly successful incandescent electric lamp had been devised by any one.

I have only to add that it is quite evident from the proofs that the issue of a patent to Weston was inadvertently made, in disregard of the expressed views of the examiner of interference, and the examiners in chief, that Weston was precluded from the grant of a patent by reason of the statutory bar of two years' public use, disclosed by the evidence in the interference proceedings in the patent office.

For the reasons above given, and without reference to other alleged defenses, the bill of complaint must be dismissed. Let a decree be drawn, dismissing the bill, with costs.