## TIN DECORATING CO. OF BALTIMORE v. METAL PACKAGE CORPORATION.

Circuit Court of Appeals, Second Circuit. January 13, 1930.

No. 63.

J. Granville Meyers, of New York City (Charles Neave, Thomas J. Johnston, J. Granville Meyers, and Charles S. Jones, all of New York City, of counsel), for appellant.

Kenyon & Kenyon, of New York City (Wm. Houston Kenyon, Theodore S. Kenyon, Frederick B. Townsend, and Virgil C. Kline, all of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge. The plaintiff, as assignee, brought this suit to recover for infringement of the George reissue patent, No. 14,393, November 13, 1917, for a machine for hinge wiring, and of Hermani patent, No. 1,267,409, May 28, 1918, for apparatus for applying hinge pintles for box part blanks.

### The George Reissue Patent.

The kind of hinges with which this patent has to do are commonly and extensively used in tin container boxes having an attached swinging cover, as is often seen on tobacco boxes and those used for aspirin and other similar products. They consist of a small wire, called the "pintle," with each of its ends inserted in, and held by, ears punched out of the box, over which suitable projections on the cover are bent, to hold the box and cover together, and make possible the hinge or swinging motion necessary to opening and closing the box. This patent relates only to preparing the pintle and putting its ends into the ears on the box. Claims 1, 2, 6, 16, 18, 19, 23, 24, 25, and 28 are relied on, and of these claims 1, 2, 6, 16, 18, and 24 are typical. The defendant contends that the patent is invalid, for the reason that George was not the original and sole inventor, and that, if valid, it has an implied license or shop right to use the machines in its business. It seems best to consider first the validity of the patent.

Formerly George and a Mr. Bruns, who is now president of the defendant, were friends and fellow workmen in the employ of the American Stopper Company. Bruns left that employment, and was largely instrumental in forming and operating the defendant corporation which manufactures tin boxes. George remained with the Stopper Company until he was employed by Bruns in December, 1910, to serve as a foreman in the defendant's factory in charge of operations which included the insertion of the pintles in the boxes. These were all put in by hand after they had been cut to proper length, and the ears in the box blanks pressed out for their reception. Before coming to the defendant, George had conceived the idea that a machine could be constructed to do this work, and in his spare time had made a rough wooden model to show how he thought the machine should be made. He told Bruns what he thought could be done and about the model he had made.

Bruns was immediately interested, and George, after showing and explaining the model to him, permitted him to take it, upon the understanding that he would not show it to any one outside, except an engineer of the E. W. Bliss Company, which manufactured machines of the kind used by the defendant. Bruns showed the model to his chief engineer, Mr. Gueritey, and then had Mr. Klocke, the chief engineer of the Bliss Company, come to see it. George explained the model to them. Klocke did not testify in this case, but it fairly appears from the testimony of Gueritey and others that neither he nor Klocke were impressed with the means George had chosen for putting in the pintle by machinery. Klocke said he could adapt a standard Bliss press to do the work. After Gueritey and Klocke had inspected the model, George took it away, and from that time until he subsequently left the employ of the defendant, in January, 1914, there is no evidence that George had anything further to do about the construction of a machine from his model, or that the model was ever seen again by any one but George.

The defendant, shortly after George had explained his model to Klocke, ordered a pintle inserting machine to be made by the Bliss Company. Klocke then conferred with a Mr. Schultz, the designing engineer of that company, and turned the work over to him. He made drawings, showed them to Klocke, who sketched in a hook device, and the machine was made by putting the new features on a Bliss power press No. 8. It was then tested, found to work satisfactorily, and de-

livered to the defendant. The order for the machine was entered May 15, 1912; it was delivered to the defendant on the 13th of the following September, and paid for by the defendant. It was then put into use under the supervision of George, who testified that it worked well, without any alterations being made, so far as he knew. Gueritey testified, however, of changes which he had to, and did, make to overcome defects which came to light in volume production. George, of course, saw the machine at work under his charge, and must have become entirely familiar with it, as it was at first constructed, or as altered, before he left the employ of the defendant in 1914. Up to then, he had done nothing about securing a patent, and had made no claim upon the defendant on the ground that the Bliss machine was his sole invention, and that he should be paid for it. He testified that Bruns had promised to pay him if a machine made from his model proved satisfactory, and that Bruns had through an agent offered to pay him at first $50 and later $100, both of which offers were refused.

After George left in 1914, he applied to the Bliss Company for drawings of the machine they had built and delivered to the defendant. His request was referred to Bruns, who refused to permit them to comply with it. George then made over his first model, so that it represented in all essential respects the machine the Bliss Company had made and the defendant had been using, and delivered this new model to his attorneys for use in securing his original patent, which was No. 1,117,030, November 10, 1914. His application for it was filed March 11, 1914.

In 1916, the plaintiff purchased the patent, after notifying Bruns of its intention so to do, and being satisfied that the defendant claimed no interest in it which would prevent the plaintiff securing a good title. Bruns, in this way, learned for the first time that George had secured a patent. In due course the application for reissue was made, and the patent in suit granted.

From the foregoing it is seen that the George reissue patent covers the Bliss machine as it was constructed, and as altered, if it was altered, after it was put into use. That is, of course, claimed by the plaintiff, and not seriously disputed by the defendant. It is certain that this machine was in use commercially in the defendant's factory as early as September, 1912, approximately 18 months before the original George patent was applied for in March, 1914.

In view of this unquestioned prior public knowledge and use, the prima facie value of George's application date has been overcome, and it is necessary for the plaintiff to carry back to an actual date of invention before such public use in September, 1912. Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 11 S. Ct. 846, 35 L. Ed. 521; New England Motor Co. v. B. F. Sturtevant Co. (C. C. A.) 150 F. 131; Barber v. Otis Co. (C. C. A.) 271 F. 171. To do this, the plaintiff was able to produce no other evidence than that of George, corroborated only by what he testified were parts of his original model. Such corroboration, however, was seeming rather than real, for the parts are not themselves indicative of their date, and were shown to have been in the original model only by the testimony of George. When George made his patent model after leaving the defendant's employ, he dismantled the original and destroyed all of it, except certain portions which he used in making the new one.

■ It is claimed that the similarity of a hook device for getting the pintle into the second ear in the box blank, as shown in a part of the model testified by George to have been in the original, is so like the sketch made by Klocke on a drawing prepared by Schultz before the Bliss machine was made that Klocke must have copied from the George model in making the sketch. While Klocke did not testify, there is nothing to show that he was not equally available as a witness to either party. He was not in the employ of either, and never had been, so far as the record shows. Before the proofs were closed the defendant was not successful in an attempt to secure a delay for his production. There is no presumption, from the failure of either party to produce Klocke, that his testimony would have supported the claims of one party rather than the other. Atchison, T. & S. F. Ry. Co. v. Phipps (C. C. A.) 125 F. 478; Erie R. Co. v. Kane (C. C. A.) 118 F. 223.

It is significant that, with the George original model available for use in making the machine, Klocke did not take it to the Bliss factory, and Schultz never saw it. There was no reason whatever for Klocke sketching from memory, when the model could have been obtained for the asking, nor was there any reason for Schultz designing in the dark, so far as the model was concerned, if the model would have helped at all in designing the Bliss machine. It is equally significant that George, who had his original model at the time he left the defendant's employ, did not use it when applying for his patent. If that model did show the essential features of the machine patented, it seems strange that he would have made any attempt to obtain the Bliss drawings, and more strange that he would have gone to the trouble of making a new model. It is certainly more probable that he made the new model, because he incorporated into it the additional features which appeared in the Bliss machine and were not present in the original model.

■■ Schultz testified that he designed the Bliss machine according to his own ideas. Gueritey testified that he made necessary alterations in it before its utility in production was established. The Bliss machine is the machine of the George patent. In view of all this, the plaintiff has failed to show more than that the patent is for a machine embodying the ideas of at least two of four men, George, Klocke, Schultz, and Gueritey. Since the plaintiff must show that George's claimed invention antedated the Bliss machine, and has to rely wholly on the unsupported testimony of George, weakened as already indicated, we are forced to the conclusion that the burden of proof in this respect has not been discharged. The most that can be said for George is that he originated the idea of putting in pintles by machinery, and contributed with one or more of the others to the invention. This was not enough to prove George the first and sole inventor. Clark Thread Co. v. Willimantic Linen Co., supra; Symington Co. v. National Co., 250 U. S. 383, 39 S. Ct. 542, 63 L. Ed. 1045; Deering v. Winona Harvester Works, 155 U. S. 286, 15 S. Ct. 118, 39 L. Ed. 153; Corrington v. Westinghouse Air Brake Co. (C. C. A.) 178 F. 711.

■ Accordingly, the patent to George as the sole inventor is invalid. McKinnon Chain Co. v. American Chain Co. (C. C. A.) 268 F. 353; George v. Perkins (C. C. A.) 1 F. (2d) 978; Smart v. Wright (C. C. A.) 227 F. 84. This makes it unnecessary to consider any of the other defenses.

### The Hermani Patent.

■ The claims relied on are Nos. 3, 5, 6, 9, 10, 11, 14, and 50.

This patent covers the means of feeding the blank box parts to that point in the machine where the ears are formed, and then on to the pintle-inserting device. There is no claim of novelty in the ear-forming mechanism itself, or in the pintle insertion, which was covered by the earlier George Patent that we have already held invalid. The

Hermani device put into related timed operation in one machine the formation of the ears on blank parts and the insertion of the pintle, by taking the blanks on a flat conveyor and carrying them by an intermittent movement to the station where the ears were made, and then on to where the pintle was put in. Both operations, after the machine had placed blanks at both stations, were performed at the same time, but on different blanks. It made the work entirely automatic, from the time the blanks were placed upon the conveyor.

The defendant's machine claimed to infringe is that of the Marcell patent, No. 1,557,539, October 13, 1925. In the Marcell machine, the automatic feeding in timed relation is done by using, instead of a flat conveyor, a rather complicated revolving wheel or disc, which brings the blank parts to their proper stations successively, and allows them to remain at rest long enough for the ears to be punched out and for the pintles to be placed in position. When the machine is filled, both processes are likewise performed at the same time on different blanks. This brief statement indicates that the defendant's machine has little in common with the machine of the Hermani patent, except identity of result. The means of accomplishment are quite dissimilar, although both have an automatic feed to the ear-forming station, to the pintle insertion station, and out of the machine.

A glance at the prior art shows that the novelty in Hermani must lie only in the specific means he has employed to bring old processes together in one machine, and put them to work automatically with a feeding mechanism. Automatic feeding is very old. One method is disclosed in the Trask patent, No. 869,998, November 5, 1907; one in Denmead, No. 949,756, February 22, 1910; one in McConachy, No. 1,149,201 August 10, 1915; while in Rais, No. 68,529, September 3, 1867, revolving discs very like the defendant's are used.

In Hermani the blank box parts, after being put on the flat conveyor, are taken to the working stations by an intricate process which develops what was called in the testimony a "sort of fourway movement," and there acted upon to produce the ears and insert the pintle. The working stations themselves do not move; while, in the defendant's machine, the blank parts are taken by the revolving disc to predetermined points, where they are held while the stations are moved to them and the work done. In view of the old processes it has at most but brought together to get results in a new way; the validity of the Hermani patent, in its escape from the claim of mere aggregation, is dependent upon its being held closely to its method of combination of the old separate parts.

As so limited, it is not infringed by the defendant's machine. Compare Grinnell Washing Mach. Co. v. E. E. Johnson Co., 247 U. S. 426, 38 S. Ct. 547, 62 L. Ed. 1196; Gould & Eberhardt v. Cincinnati Shaper Co. (C. C. A.) 194 F. 680.

Decree affirmed.