Esme E. **ROSAIRE**, Appellant,

v.

**BAROID SALES DIVISION, NATIONAL LEAD COMPANY**, Appellee.

No. 15035.

United States Court of Appeals, Fifth Circuit.

Jan. 7, 1955.

Rehearing Denied Feb. 8, 1955.

Earl Babcock, Duncan, Okl., Lawrence P. Gwin, Houston, Tex., for appellant.

Harry R. Pugh, Jr., New York City, Frank Burruss Pugsley, Houston, Tex., Henry R. Ashton, New York City, Garrett R. Tucker, Jr., Houston, Tex., Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel, for appellee.

Before HOLMES and TUTTLE, Circuit Judges, and ALLRED, District Judge.

TUTTLE, Circuit Judge.

In this suit for patent infringement there is presented to us for determination the correctness of the judgment of the trial court, based on findings of fact and conclusions of law, holding that the two patents involved in the litigation were invalid and void and that furthermore there had been no infringement by defendant. 120 F.Supp. 20.

The Rosaire and Horvitz patents relate to methods of prospecting for oil or other hydrocarbons. The inventions are based upon the assumption that gases have emanated from deposits of hydrocarbons which have been trapped in the earth and that these emanations have modified the surrounding rock. The methods claimed involve the steps of taking a number of samples of soil from formations which are not themselves productive of hydrocarbons, either over a

horizontal area or vertically down a well bore, treating each sample, as by grinding and heating in a closed vessel, to cause entrained or absorbed hydrocarbons therein to evolve as a gas, quantitatively measuring the amount of hydrocarbon gas so evolved from each sample, and correlating the measurements with the locations from which the samples were taken.

Plaintiff claims that in 1936 he and Horvitz invented this new method of prospecting for oil. In due course the two patents in suit, Nos. 2,192,525 and 2,324,085, were issued thereon. Horvitz assigned his interest to Rosaire.

Appellant alleged that appellee Baroid began infringing in 1947; that he learned of this in 1949 and asked Baroid to take a license, but no license agreement was worked out, and this suit followed, seeking an injunction and an accounting.

In view of the fact that the trial court's judgment that the patents were invalid, would of course dispose of the matter if correct, we turn our attention to this issue. Appellee's contention is that the judgment of the trial court in this respect should be supported on two principal grounds. The first is that the prior art, some of which was not before the patent office, anticipated the two patents; the second is that work carried on by one Teplitz for the Gulf Oil Corporation invalidated both patents by reason of the relevant provisions of the patent laws which state that an invention is not patentable if it "was known or used by others in this country" before the patentee's invention thereof, 35 U.S.C.A. § 102(a). Appellee contends that Teplitz and his coworkers knew and extensively used in the field the same alleged inventions before any date asserted by Rosaire and Horvitz.

On this point appellant himself in his brief admits that "Teplitz conceived of the idea of extracting and quantitatively measuring entrained or absorbed gas from the samples of rock, rather than relying upon the free gas in the samples.

We do not deny that Teplitz conceived of the methods of the patents in suit." And further appellant makes the following admission: "We admit that the Teplitz-Gulf work was done before Rosaire and Horvitz conceived of the inventions. We will show, however, that Gulf did not apply for patent until 1939, did not publish Teplitz's ideas, and did not otherwise give the public the benefit of the experimental work."

Appellant poses what it claims to be the main issue as follows: "The main question before the court on this appeal is: Does the earlier experiment by Gulf invalidate the patents in suit? The District Court has held that it does. We contend that it does not."

We shall discuss these points in the order of importance that the parties themselves seem to place on them.

In support of their respective positions, both appellant and appellee stress the language in our opinion in the case of Pennington v. National Supply Co., 5 Cir., 95 F.2d 291, 294, where, speaking through Judge Holmes, we said:

"Appellant insists that the court erred in considering the prior use of the Texas machine, because that machine was abandoned by the Texas Company and was not successful until modified and rebuilt. As to this, it does not appear that the Texas machine was a failure, since it drilled three wells for the Texas Company, which was more than was usually accomplished by the rotary drilling machines then in use.

"An unsuccessful experiment which is later abandoned does not negative novelty in a new and successful device, T. H. Symington Co. v. National Malleable Castings Co., 250 U.S. 383, 386, 39 S.Ct. 542, 63 L.Ed. 1045; Clark Thread Co. v. Willimantic Linen Co., 140 U.S. 481, 489, 11 S.Ct. 846, 35 L.Ed. 521. Nevertheless, the existence and operation of a machine, abandoned after its completion and sufficient use to demonstrate its practicabili-

ty, is evidence that the same ideas incorporated in a later development along the same line do not amount to invention. Corona Cord Tire Co. v. Dovan Chemical Corporation, 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610; Jones v. Sykes Metal Lath & Roofing Co., 6 Cir., 254 F. 91. If the prior machine does not anticipate, it would not have done so if it had been neither unsuccessful nor abandoned. Novelty is ascribed to new things, without regard to the successful and continued use of old things. Correlatively, it is denied to old things, without regard to the circumstances which caused their earlier applications to be unsatisfactory or their use to be abandoned. Cf. Pickering v. McCullough, 104 U. S. 310, 26 L.Ed. 749; Merrimac Mattress Mfg. Co. v. Feldman, C.C., 133 F. 64; Van Epps v. United Box Board & Paper Co., 2 Cir., 143 F. 869."

The question as to whether the work of Teplitz was "an unsuccessful experiment," as claimed by appellant, or was a successful trial of the method in question and a reduction of that method to actual practice, as contended by appellee, is, of course, a question of fact. On this point the trial court made the following finding of fact:

"4.

"I find as a fact, by clear and substantial proof beyond a reasonable doubt, that Abraham J. Teplitz and his coworkers with Gulf Oil Corporation and its Research Department during 1935 and early 1936, before any date claimed by Rosaire, spent more than a year in the oil fields and adjacent territory around Palestine, Texas, taking and analyzing samples both over an area and down drill holes, exactly as called for in the claims of the patents which Rosaire and Horvitz subsequently applied for and which are here in suit.

"This Teplitz work was a successful and adequate field trial of the prospecting method involved and a reduction to practice of that method. The work was performed in the field under ordinary conditions without any deliberate attempt at concealment or effort to exclude the public and without any instructions of secrecy to the employees performing the work."

■ As we view it, if the court's findings of fact are correct then under the statute as construed by the courts, we must affirm the finding of the trial court that appellee's patents were invalid. Buser v. Novelty Tufting Machine Co., 6 Cir., 151 F. 478, 493; Electrol, Inc., v. Merrell & Co., Inc., 8 Cir., 39 F.2d 873; Corona Cord Tire Co. v. Dovan Chemical Corporation, 276 U.S. 358, 48 S.Ct. 380, 72 L.Ed. 610. As to the finding of fact we are to affirm unless we conclude that it is "clearly erroneous." Rule 52, Fed. Rules Civ.Proc., 28 U.S.C.A.

■ A close analysis of the evidence on which the parties rely to resolve this question clearly demonstrates that there was sufficient evidence to sustain the finding of the trial court that there was more here than an unsuccessful or incomplete experiment. It is clear that the work was not carried forward, but that appears to be a result of two things: (1) that the geographical area did not lend itself properly to the test, and (2) that the "entire gas prospecting program was therefore suspended in September of 1936, in order that the accumulated information might be thoroughly reviewed." It will be noted that the program was not suspended to test the worth of the method but to examine the data that was produced by use of the method involved. The above quotation came from one of the recommendations at the end of Teplitz's report, and was introduced on behalf of the appellant himself.

Expert testimony presented by witnesses Rogers, Eckhardt and Weaver supported appellee's contention.

■ With respect to the argument advanced by appellant that the lack of pub-

lication of Teplitz's work deprived an alleged infringer of the defense of prior use, we find no case which constrains us to hold that where such work was done openly and in the ordinary course of the activities of the employer, a large producing company in the oil industry, the statute is to be so modified by construction as to require some affirmative act to bring the work to the attention of the public at large.

While there is authority for the proposition that one of the basic principles underlying the patent laws is the enrichment of the art, and that a patent is given to encourage disclosure of inventions, no case we have found requires a holding that, under the circumstances that attended the work of Teplitz, the fact of public knowledge must be shown before it can be urged to invalidate a subsequent patent. The case of Corona Cord Tire Co. v. Dovan Chemical Corporation, supra, is authority for the opposing view, that taken by the court below. In that case the Supreme Court said:

"In 1916, while with the Norwalk Company, Kratz prepared D. P. G. and demonstrated its utility as a rubber accelerator by making test slabs of vulcanized or cured rubber with its use. Every time that he produced such a slab he recorded his test in cards which he left with the Norwalk Company and kept a duplicate of his own. * * * This work was known to, and was participated in, by his associate in the Norwalk Company, his immediate superior and the chief chemist of the company, Dr. Russell, who fully confirms Kratz's records and statement." Corona Cord Tire Co. v. Dovan Chemical Corporation, 276 U.S. 358, 378, 379, 48 S.Ct. 380, 386, 72 L.Ed. 610.

The court further states in the Corona case at page 382 of 276 U.S., at page 387 of 48 S.Ct.:

"But, even if we ignore this evidence of Kratz's actual use of D. P.

G. in these rubber inner tubes which were sold, what he did at Norwalk, supported by the evidence of Dr. Russell, his chief, and by the indubitable records that are not challenged, leaves no doubt in our minds that he did discover in 1916 the strength of D. P. G. as an accelerator as compared with the then known accelerators, and that he then demonstrated it by a reduction of it to practice in production of cured or vulcanized rubber.

"This constitutes priority in this case."

This same principle underlies the decision of the Court of Appeals for the Second Circuit in the case of United Chromium v. General Motors Corporation, 85 F.2d 577, and in the Seventh Circuit in United Chromium v. Kohler Co., 159 F.2d 979.

The other basis of appellee's attack on appellant's patents was the disclosures in the Graf article, which was published in Germany in September, 1935. This article was not considered by the Patent Office and the patents were therefore greatly weakened and they lack the presumption of validity that would otherwise exist. While there was disputed expert testimony on the point, there was ample support both from the oral evidence and from a reading of the Graf article itself to warrant the court's finding of fact No. 3 that the patents in suit had been anticipated by this publication.

In connection with the presumption of validity in such a case see R. Hoe & Co. v. Goss Printing Press Co., 2 Cir., 30 F. 2d 271; National Electric Products Corp. v. Grossman, 2 Cir., 70 F.2d 257; Boynton v. Chicago Hardware Foundry Co., 7 Cir., 77 F.2d 799.

Concluding, as we do, that the trial court correctly held the patents invalid, it is not necessary to consider the question of infringement. The judgment of the trial court is affirmed.