REYNA, Circuit Judge,
concurring.
I agree with the majority that the presumptive six-year period for laches on a claim to correct inventorship under 35 U.S.C. § 256 does not begin to run before the patent issues, even when the omitted inventor knew or should have known of the omitted inventorship while the patent application was pending before the PTO.
Prior to enactment of § 256 in the Patent Act of 1952, the various circuit courts grappled with the inflexible rule that incorrect inventorship invalidated the patent. When juxtaposed against the vexing question raised when the patent was the work of several inventors acting jointly, the rule presented questions acknowledged as “not free from difficulty.” Iowa State Univ. Research Found., Inc. v. Sperry Rand Corp., 444 F.2d 406, 408 (4th Cir.1971); see also Shreckhise v. Ritchie, 160 F.2d 593, 595 (4th Cir.1947) (“[W]hen a patent is issued to one person for something which was jointly invented by several the patent is invalid.”); William R. Thropp & Sons, Co. v. De Laski & Thropp Circular Woven Tire Co., 226 F. 941, 947 (3d Cir.1915) (“A patent for an invention claimed to be the joint conception or invention of two, when in truth it is the separate invention of but *1339 one, cannot be issued to both, or, if issued, is void as to both.”); Tin Decorating Co. v. Metal Package Corp., 37 F.2d 5, 7 (2d Cir.1930).
Congress enacted § 256 to provide relief against the hardship (invalidation) brought on by mistake of inventorship. The legislative history is scant, but Senate and House reports contain nearly identical language that notes a correlation between 35 U.S.C. § 116[1] and § 256. Section 256 operates to permit “a bona fide mistake in joining a person as an inventor or in failing to join a person as an inventor to be corrected.” S.Rep. No. 82-1979, at 7 (1952), 1952 U.S.C.C.A.N. 2394, 2401; H.R.Rep. No. 82-1923, at 9 (1952). Unlike § 116, which specifies that the Director may permit the patent application to be amended “under such terms as he prescribes,” § 256 contains the imperative that, upon an order from a court after notice and hearing of all parties concerned, “the Director shall issue a certificate [correcting inventorship].” Compare 35 U.S.C. § 116(c), with 35 U.S.C. § 256(b) (emphasis added).
In his commentaries on the 1952 Patent Act, P.J. Federico observed that concurrence of all the parties was required to correct misjoinder or nonjoinder at the PTO under both § 116 and § 256. P.J. Federico, Commentary on the New Patent Act, 35 U.S.C.A., p. 1, at 27-28, 50 (1954). The final paragraph of § 256 was enacted to permit courts to correct mistakes of inventorship absent such consent. Id. at 50 (“If [the parties] do not concur, the correction can only be made on order of a court as provided in the third paragraph.”); see also Sperry Rand, 444 F.2d at 408-09 (recognizing that although not part of the legislative history, “Federico’s Commentary is entitled to the weight ordinarily accorded an acknowledged authority in his field”).
The Fourth Circuit in Sperry Rand observed:
The distinction which Federico noted between the power of the Commissioner, who can correct a patent only on consent of all parties, and that of a court, which can act without consent, has a rational foundation. Patents “have the attributes of personal property.” 35 U.S.C. § 261; see 4 Deller’s, Walker on Patents 41 (2d ed.1965). After the issuance of a patent, the Commissioner lacks jurisdiction over it save in interference proceedings, where the right of judicial review is assured. 35 U.S.C. §§ 141, 146. The patentee has a vested property right that can be canceled, revoked, or annulled only by judicial proceedings that afford due process of law.
* * *
These well-established principles underlie the limitation that Congress placed on the Commissioner but not on the courts.
444 F.2d at 409.
Because the final paragraph of § 256 was enacted to provide specific judicial relief on issues of inventorship without a concurrence by all parties, I agree with the majority that a discovery standard for laches is inappropriate because it would obviate the judicial remedy under § 256. *1340 This is especially true since § 256 is a remedial statute, meaning it was enacted to provide a specific form of relief. See generally Sperry Rand, 444 F.2d 406.
I diverge from the majority, however, when it reasons, “while ... prompt resolution of inventorship disputes certainly is a desirable goal, there may be circumstances in which it would be inefficient to require an omitted inventor to initiate an inventorship dispute while the application is still pending.” Maj. Op. at 1386. There is no doubt that prompt resolution of inventorship disputes is a desirable goal. But the “inefficienfcy]” that the majority identifies as competing with that goal— requiring an omitted inventor to initiate an inventorship dispute while the application is pending when a narrowing amendment could still affect that inventorship claim— is inconsistent with the desirability and efficiency wrought by prompt resolution of inventorship issues. See id. If claims are narrowed or even canceled during examination, the scope of the patent becomes narrower, not broader. Shrinking patent scope does not necessarily give rise to previously nonexistent inventorship claims. Since an omitted inventor would know whether he or. she has a cognizable inventorship claim from the very beginning, there is no rational reason to wait until the patent issues to assert a claim for inventorship.
I believe the differences between § 116 and § 256 create a potential incentive to not challenge inventorship until the patent issues notwithstanding actual knowledge of the omission by an omitted inventor. Without a threat of laches that would bar a § 256 claim to correct inventorship within a specific time period beginning with the date the omitted inventor is shown to have known of the omission, the omitted inventor is encouraged to remain silent as the applicant bears the costs of prosecution and garners potentially lucrative licenses. Then, once the patent issues, the omitted inventor can claim entitlement to the fruit of applicant’s labors.
While the application is non-final and undergoing examination, the PTO is well positioned to correct inventorship errors. See, e.g., 35 U.S.C. §§ 116; 135(a); 37 C.F.R. § 1.48. Allowing omitted inventors to forego efficient PTO inventorship correction processes needlessly burdens the courts and weighs heavily on the patent system. Properly understood, I believe policy considerations support a conclusion contrary to the statutorily required one we reach today, but it is up to Congress, not this court, to amend the statute accordingly.

. In the pertinent part, 35 U.S.C. § 116 provides: “Whenever through error a person is named in an application for patent as the inventor, or through error an inventor is not named in an application, the Director may permit the application to be amended accordingly, under such terms as he prescribes.” Id. By its reference to "an application,” § 116 is limited to applications pending at the PTO. The regulation enforcing it, 37 C.F.R. § 1.48, likewise implicitly makes clear that that the remedy under § 116 is only available upon agreement of all the parties. See 37 C.F.R. § 1.48(a)(1); see also 37 C.F.R. § 1.76(e).