## ALLIS–CHALMERS MFG. CO. et al. v. COLUMBUS ELECTRIC & POWER CO. et al.

Circuit Court of Appeals, Fifth Circuit.
June 6, 1927.

No. 4806.

1. Patents ⊕⇒17(1), 45, 49—Simplicity of change does not negative invention, but general use of new device evidences novelty and utility.

The simplicity of the change suggested by a patentee does not prove the absence of patentable invention, but immediate acceptance and general use of the new structure in preference to the old is evidence of patentable novelty, as well as utility.

2. Patents ⊕⇒167(1)—Drawings, statements, and descriptions in specifications are to be considered in determining meaning of claims.

The drawings, statements, and descriptions in the specification contained in application for patent are to be considered in determining the meaning of claims.

3. Patents ⊕⇒236(1)—Change of form, unless form is of substance of invention, does not avoid infringement.

Change of form does not avoid infringement, unless the patent form is a distinguishing feature of the invention, or is necessary to the functions ascribed to it by the patent.

4. Patents ⊕⇒328—White patent, 1,076,617 claims 1–6, for spiral casing for hydraulic turbines, held valid and infringed.

White patent, No. 1,076,617, claims 1–6, for spiral casing for hydraulic turbines; held valid and infringed.

Appeal from the District Court of the United States for the Northern District of Georgia; Samuel H. Sibley, Judge.

Suit in equity by the Allis-Chalmers Manufacturing Company and William M. White against the Columbus Electric & Power Company and the S. Morgan Smith Company. Decree for defendants, and complainants appeal. Reversed and remanded.

Edgar Watkins, of Atlanta, Ga., Clifton V. Edwards, of New York City, and J. Blanc

Monroe and Monte M. Lemann, both of New Orleans, La. (George F. DeWein, of Milwaukee, Wis., Edwards, Sager & Bower, of New York City, and Monroe & Lemann, of New Orleans, La., on the brief), for appellants.

Robt. C. Alston, of Atlanta, Ga., and Charles H. Howson and William Abbe, both of New York City (Howson & Howson, of New York City, and Alston, Alston, Foster & Moise, of Atlanta, Ga., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The bill in this case charged infringement of letters patent No. 1,076,617, granted to one of the appellants, William M. White, October 21, 1913, for a spiral casing, the specification of the patent stating: "This invention relates to improvements in the construction of spiral casings for machinery using a fluid medium, such as hydraulic turbines, centrifugal pumps, blowers and other similar machinery." The charges of infringement were based upon the installation of the inlet casings for hydraulic turbines in two water power plants, one referred to as the Goat Rock installation, and the other as the Bartlett's Ferry installation.

The claims asserted by the bill were resisted on the grounds that the patent was invalid, and that it was not infringed by the structures complained of. The opinion rendered by the District Judge shows that the dismissal of the bill was a result of the conclusion that infringement was not established. Doubt as to the validity of the patent was expressed, the opinion stating: "I have grave doubts whether any patentable novelty really existed, but I give the doubt in favor of the patent." In this court the appellees seek to support the decree appealed from on both the grounds set up in the court below, contending that the patent is invalid, and that, if it is valid, it was not infringed by the structures in question.

While the patent relates to casings for other machines as well as hydraulic turbines, it may be considered only in connection with turbines, as inlet casings for turbines are the only subjects of controversy in this suit. The casings in question are those which perform the function of directing the water against the wheel. Such casings surround the rings between which the turbine blades revolve, being attached to the rims of the parallel rings, and having no openings other than where the water enters the casing and where it escapes therefrom through the opening left between the rings, the casing, tapering or lessening in diameter from its inlet end to its other end,

furnishing a conduit for water around the wheel until it escapes through the opening between the parallel rings of the wheel. The general statement of the nature and object of the invention contained in the specification of the patent in suit and illustrated in the accompanying drawings show that the principal object of the patentee was to introduce a type or form of inlet casing for hydraulic turbines different in construction in indicated respects from the types of such casing which theretofore had been used.

A feature of the types of casings previously in general use was a continuously curving interior surface, which avoided any obstacle to the flow of water after it entered the casing until it escaped therefrom through the opening between the rings to which the casing was attached. That feature is departed from in a casing embodying claims of the patent in suit by making the periphery of the casing a broken line one, instead of one continuously curving. This was effected by making the casing of a series of tubular sections of sheet material somewhat similar to the sections of a stovepipe elbow. Following the above-quoted statement of the specification, that part of the instrument contains the following:

"An object of the invention is to provide a casing for such machinery, which is simple in construction and efficient in operation. Casings for such machinery as heretofore constructed have been formed either of cast iron, concrete, or of plate steel with a rectangular cross section.

"It is an object of the present invention to substitute for these former constructions a casing built up of a series of tubular sections of sheet material. Such formation of the casing of a series of tubular sections of sheet material will permit the construction of a lighter and considerably stronger casing at greatly reduced cost.

"A clear conception of the invention as applied to a hydraulic turbine may be had by referring to the drawing accompanying and forming a part of this specification, in which like reference characters designate the same or similar parts in the several views.

"Figure 1 is a transverse vertical section through a sheet material hydraulic turbine spiral casing, showing a Francis runner in operating position therein. Fig. 2 is a top view, partly in section, of a sheet material hydraulic turbine spiral casing. * * *

"During the operation of the runner 7, the water under pressure is admitted to the spiral casing through the inlet 16 and passes from the chamber formed within the spiral casing through the guide vanes 8 and runner 7, from

which it is discharged into the discharge *11.* It will be noted that the reason for forming the spiral casing of progressively decreasing cross section is that the single inlet *16* supplies water to the entire periphery of the Francis turbine runner, and that the surplus amount of the water entering the casing near the inlet *16,* which does not pass directly to the runner *7,* passes on through the casing to a point where it is eventually freely admitted to the runner *7* of the turbine.

"The casing disclosed in the drawing is applied to a Francis type of hydraulic turbine, although it will be evident to those skilled in the art that a casing of this character might just as easily be applied to an impulse or any other type of turbine, centrifugal pump, or similar device.

"The sheet material sections *4* formed substantially cylindrical with circular cross sections and straight line elements, provide a very light casing adapted to withstand very high internal pressures which subject the casing walls to high tension strains. The formation of the lap joints between successive sections *4,* also provides a casing which gradually guides the water to the turbine and prevents the formation of eddies or other undesirable undulations in the passing flow.

"It should be understood that it is not desired to be limited to the exact details herein shown and described for obvious modifications may occur to a person skilled in the art."

The following are the claims of the patent:

"1. A spiral casing, consisting of a series of tubular, sheet material, transverse sections, said sections having straight line generatrices extending in the direction of flow in said casing and said sections each having at least one portion extending to the end thereof at an angle to the remainder of said section and also having straight line generatrices to facilitate the union of said sections and said spiral casing having a continuous annular inwardly directed discharge passage.

"2. A spiral casing consisting of a series of tubular, sheet material, transverse sections, said sections successively decreasing in size and having straight line generatrices extending in the direction of flow in said casing and said sections each having at least one portion extending to the end thereof at an angle to the remainder of said section and also having straight line generatrices to facilitate the union of said sections and said spiral casing having a continuous annular inwardly directed discharge passage.

"3. A spiral casing consisting of a series of plate steel tubular sections, adjacent sections being at an angle to each other in the plane of said casing, said sections having straight line generatrices extending in the direction of flow in said casing and each having at least one edge at said angle to the remainder of said section and also having straight line generatrices to accommodate the angularity between said sections and said spiral casing having a continuous annular inwardly directed discharge passage.

"4. A spiral casing consisting of a plurality of spaced rings, and a series of sheet material sections having straight line generatrices extending in the direction of flow in said casing and having edges secured to said rings.

"5. A spiral casing consisting of a plurality of spaced rings, and a series of sheet material sections having straight line generatrices extending in the direction of flow in said casing and having overlapping ends and having edges secured to said rings.

"6. A spiral casing comprising a series of short tubular sections successively increasing in size and having adjacent ends secured together and said sections being of such form that linear elements thereof extending in the direction of flow of fluid in said casing are straight."

The following extract from the opinion rendered by the District Judge well states the problem the patentee dealt with when he undertook to provide a casing of simple and economical construction to take the place of the old cast iron, concrete, and rectangular plate constructions:

"Pressure boxes, which are really only the end of the penstock, and which were used for turbines when efficiency was not of great importance, have generally yielded to spiral casings around the turbine which direct the flow of the water smoothly and evenly to the turbine, its diminishing section maintaining the velocity and pressure all around the periphery. This spiral form, diminishing in section, was recognized as ideal. Smoothness and regularity of interior surface was believed to be vital. Such spiral casings were successfully constructed in concrete where the pressure was not too great. They were also constructed of flat steel plates, the section of the spiral being rectangular. In this form great size or pressure could not obtain, because of the necessity of interior and other bracing to support the flat surfaces. Casings of circular section were made of cast iron and cast steel, which were of ideal form, but limited as to size and pressure because of the great cost of making patterns to be used but once, because of the great thickness necessary to be given the casting, and because of the great

difficulties in machining, shipping, and erecting such heavy elements."

The evidence showed that the issue of the patent was soon followed by an extensive use of the patented type of casing, that the use of such casings has steadily increased, and that for heads of 30 feet and more the type of casing disclosed by the patent has practically supplanted the types formerly in use. Prior to the date of the patentee's application it was not unusual for a penstock (the conduit through which water goes from the dam or reservoir to the inlet of a turbine casing) to consist of a series of transverse tubular sheet material sections having a straight line surface in the direction of the flow of the water, and, where the penstock was curved to go around an obstruction, having sections similar in shape to those shown in the patent drawings of a spiral sheet material casing. In behalf of the appellees it was contended that a structure embodying one or more claims of the patent would amount to no more than extending and bending around the turbine such a penstock as was in common use before the patent was applied for, and that such an extension of the use of an old device called for only the ordinary skill of a mechanic versed in his art.

After the suggestion of the patented type of casing was made, no doubt it was a simple and easy mechanical achievement so to change and adapt the familiar stovepipe elbow or curved penstock construction as to produce the patented spiral casing. It well may be inferred that such a simple modification and adaptation of an old device to subserve a new purpose did not come sooner because of the prevalence of the notion that smoothness and continuous curving of the inside surface of the wall of the turbine casing were essential to the effective directing of the water against the wheel and that any angles within the casing would so interfere with the smooth flow of the water as seriously to impair the efficiency of the turbine. The application for the patent indicated that the applicant was influenced by the conception that an inlet turbine spiral casing consisting of sheet material transverse sections having a straight line surface in the direction of the water's flow had advantages in respect of the expense and trouble involved in fabricating, transporting, assembling, and installing the parts making up the casing that would more than compensate for any loss of efficiency in directing the water to the blades or runners of the turbine.

[1] For several years before the patent in suit was applied for the disadvantages of using the old types of casing in the increasingly large constructions called for in the rapid development of water powers were apparent; but those engaged in the development continued to use the old smooth-surface casings until the patented type of casing was disclosed and by use was proved to be efficient and economical. It is apparent that the penstock was not used to accomplish the function of directing the water to the turbine blades, and that a separate and distinct mechanical device, an inlet casing, was relied on to accomplish that function. "It is not sufficient to constitute an anticipation that the device relied upon might, by modification, be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for the performance of such functions." Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658.

The simplicity of the change suggested by the patentee by no means proves the absence of patentable invention. The change from the old types of casing was evidence of novelty, and the acceptance and utility of the change were such as properly may be regarded as demonstrating patentable novelty. The patented type of casing was accepted and adopted extensively for water power installations of such magnitude and importance that it fairly may be inferred that the selection of the casing to be used was generally made by persons fully competent to select casings on their merits; and it also may be inferred that one or more of the many skilled persons engaged in the work of water power development would have brought about the use of a casing similar to the patented one before the patent was applied for, if either the familiar stovepipe elbow or the curved part of a penstock was enough to suggest to a mechanic of ordinary intelligence the feasibility and advantages of such a change from the types of casing formerly in use as was disclosed by the patent. Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Potts v. Creager, 155 U. S. 597, 15 S. Ct. 194, 39 L. Ed. 275. The presumption of invention created by the grant of the patent is so strengthened by a widespread use of the patented device and a practical acknowledgment of its utility that, in the absence of any disclosure of a real anticipation, the conclusion that the patent is valid seems to be fully warranted.

It is not contended that the plan of construction followed in the Goat Rock and Bartlett's Ferry casings deviated in any particular from a casing constructed in conformity with the drawings, description, and claims of the patent in suit, except that a part of each of

the sections of those casings was so bent or pressed from the inside out that the surface of the sheet steel in that part of the section is not straight in the direction of the water flow. The only part of any section of either of those casings which was pressed or rolled for the purpose of impairing the straightness of the sheet steel in the direction of the water flow was the part which is at and near the periphery or circumference line of the casing. The distorting or bending in the Goat Rock casing was so slight that it furnished no basis for a contention that there is, even in form, any substantial difference between that casing and one constructed in strict accordance with the patent. In the Bartlett's Ferry casing the deviation from straightness of the surface, disclosed by placing a straight edge on the steel sheet in the direction of the flow, is a small fraction of an inch in a distance of 20 inches. [2] The contention that that casing does not infringe is based upon this slight difference in form between a section of that casing and a section of a casing embodying one or more of the claims of the patent. The meaning of those claims is to be determined by considering, not solely the language thereof, but also the patent drawings, and statements and descriptions contained in the specification. Brooks v. Fiske, 15 How. 212, 14 L. Ed. 665; Fuller v. Yentzer, 94 U. S. 288, 24 L. Ed. 103; Mossberg v. Nutter (C. C. A.) 135 F. 95. The above-quoted part of the specification of the patent in suit plainly discloses that the object of the patentee was to substitute for the type of casings formerly used a casing built up of a series of tubular sections of sheet material, and that the merit claimed for the proposed new type of casing was that it would permit the construction of a lighter and considerably stronger casing at greatly reduced cost. Nothing in the letters patent indicates that the patentee believed or contended that straightness of the surface of a section in the direction of the water flow contributed in the slightest degree to the merit or value of his invention.

The record is consistent with the conclusion that, while the application for the patent was pending, the understanding on the part of both the applicant and the Patent Office officials was that no utility or advantage was attributed to a departure from the continuously curving interior surface feature of the casings formerly in use, and that the proposed change of construction was an improvement, not to any extent because of, but notwithstanding, such departure. The history of the progress of the application through the Patent Office, as disclosed by the file wrapper,

indicates that the changes made in the applicant's original claims had for their object a more accurate description of the elements or features of the casing disclosed by the patent drawings and description. The term "straight line generatrices extending in the direction of the flow" was used to describe a part of the surface of a sheet metal section, or of the overlapping end thereof, which conformed to a straight line in the direction stated. That the language in claim 5, "sheet material sections having straight line generatrices extending in the direction of flow in said casing," was not intended to mean that the entire surface of a section must be straight in that direction, is made manifest by the circumstances that the method of construction indicated in the same claim involves the bending or curving in that direction of the section at and near its junctions with the rings of the water wheel. A casing cannot be constructed in accordance with the patent without parts of each of its sections being bent or curved in the direction of the flow within the casing.

[3] There is ample warrant for the conclusion that straightness of the surface of a section in the direction of the flow is not of the essence of the invention. "A change of form does not avoid an infringement of a patent, unless the form shown in the patent is necessary to the functions which the patent ascribes to the invention, or unless that form is the distinguishing characteristic of the invention, or is essential to its patentability, or unless the patentee specifies the form as a means by which the effect of the invention is produced, or otherwise confines himself to a particular form of what he describes. Even where a change of form somewhat modifies the construction, the action, or utility of a patented thing, noninfringement will seldom result from such a change." Walker on Patents (5th Ed.) § 363. The just quoted statement is well supported by authority.

The case of Winans v. Denmead, 15 How. 330, 14 L. Ed. 717, is a well-known instance of the failure of an attempt to avoid infringement by a change in the form of a part of a patented construction. The following is an extract from the opinion in that case: "Where form and substance are inseparable it is enough to look at the form only. Where they are separable, where the whole substance of the invention may be copied in a different form, it is the duty of courts and juries to look through the form for the substance of the invention—for that which entitled the inventor to his patent, and which the patent was designed to secure; where that is found, there is an infringement; and it is not a defense, that

it is embodied in a form not described, and in terms claimed by the patentee."

The alleged infringer in the case of Ives v. Hamilton, 92 U. S. 431, 23 L. Ed. 494, substituted for the curved guide of a patent for a saw similar guides made crooked by a broken straight line. The change of form was held not to avoid infringement. The case of Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000, involved a charge of infringement of the Nicholson wood block pavement patent, which called for arranging on a described foundation or support "a series of blocks having parallel sides, endwise, in rows," etc. The alleged infringer made a pavement differing from the Nicholson, principally in avoiding parallelism of the sides of the blocks. The difference in form was held not to avoid infringement. The following is an extract from the opinion in that case:

"It is objected, that the blocks of the Elizabeth pavement have not parallel sides, as prescribed in Nicholson's patent, by reason of the notch or groove in the side, into which the strips are fitted; but this notch or groove does not take from the blocks their general conformity to the requisition of the patent. They are parallel-sided blocks, with a groove made in the lower part to receive the edges of the strips. The parallel-sided blocks described in Nicholson's patent were probably intended to distinguish them from such blocks as those described in Stead's patent, which were hexagonal and triangular in form; or those in Wood's patent, which were of a pyramidal shape, the opposite sides being at an angle with each other. As contradistinguished from these, both the Nicholson blocks and those used by the appellants are properly denominated blocks with parallel sides."

[4] It well may be inferred that the patentee in the instant case, in describing in his claims the surface of a section of his tubular sheet material casing and the surface of the overlapping end as having straight line generatrices extending in the direction of flow in the casing, intended to distinguish his type of casing from the old types in which a continuously curving inside surface was an essential feature. The conclusion that a bulge in a small part of the surface of a tubular sheet steel casing section, the remainder of the surface being straight in the direction of the flow in the casing, does not keep the surface of the section from complying substantially, though not literally, with the patent's requirement that the section have "straight line generatrices in the direction of the flow in said casing," seems to be as justifiable as the conclusion that notches or grooves in the sides of a wooden block, which otherwise has parallel sides, does not take from the block's general conformity to a requirement that its sides be parallel.

Circumstances disclosed by the evidence quite persuasively indicate that the deviations from straightness in the direction of the flow in the Goat Rock and Bartlett's Ferry casings were made for the purpose of avoiding infringement. The manufacturer of those casings, one of the appellees, went to great expense, more than $100,000, for machinery and appliances used to effect those deviations, and did so without any real investigation to ascertain whether the change of form would or would not result in a substantial increase of the efficiency of the casing, though the manufacturer was, according to the testimony of its president, "the largest manufacturer of water wheels in the world, devoted exclusively to that business." Practically uncontroverted expert testimony contained in the record indicates that the deviations from straightness in the direction of the flow in the Goat Rock and Bartlett's Ferry casings did not substantially add to the efficiency those casings would have possessed, if they had been constructed in literal conformity to the patent in suit, and that a desired increase of efficiency could be attained much more easily and economically by increasing the size of the casing than by outwardly bending or curving its sheet metal sections.

We conclude that the departures in the Goat Rock and Bartlett's Ferry casings from the patented construction were changes of form, where form was not a matter of substance—the form departed from not being of the essence of the invention—and that such changes did not avoid infringement.

The decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.