**ALLIS-CHALMERS MFG. CO. et al. v. COLUMBUS ELECTRIC & POWER CO. et al.**

Circuit Court of Appeals, Fifth Circuit.
December 5, 1927.

No. 4806.

1. **Equity ⪧463—Petitioners for leave to apply to trial court for rehearing have burden of proving materiality of, and diligence in, discovering newly discovered evidence.**

Burden of showing that newly discovered evidence, on which petition to appellate court for leave to apply for rehearing in trial court is based, is material and could not have been discovered at or before the trial by exercise of due diligence, is on petitioners.

2. **Equity ⪧456—Leave to apply to trial court for rehearing will not be granted, except on showing which would probably induce different decision.**

Leave of the appellate court to apply for rehearing in trial court on newly discovered evidence will not be granted, unless the evidence is so persuasive that it will probably induce a conclusion different from that on which the decree was based.

22 F.(2d)—47

3. **Equity ⪧456—Leave to apply to trial court for rehearing for newly discovered evidence will be denied, because available at trial.**

Leave of appellate court to apply to trial court for rehearing on the ground of newly discovered evidence will be denied, where such evidence applied to the chiefly contested issue and was available to applicant at the time of hearing.

Petition by Appellees for Leave to Apply to the District Court for Rehearing.

Suit in equity by the Allis-Chalmers Manufacturing Company and William M. White against the Columbus Electric & Power Company and the S. Morgan Smith Company. On petition of defendants for leave to apply to District Court for rehearing. Denied.

For prior decision, see 19 F.(2d) 860.

Clifton V. Edwards, of New York City, and J. Blanc Monroe, of New Orleans, La. (Edgar Watkins, of Atlanta, Ga., Edwards, Sager & Bower, of New York City, Monroe & Lemann, of New Orleans, La., George F. De Wein, of Milwaukee, Wis., and Watkins, Asbill & Watkins, of Atlanta, Ga., on the brief), for appellants.

Robert C. Alston, of Atlanta, Ga. (Wm. Abbe and Howson & Howson, all of New York City, and Alston, Alston, Foster & Moise, of Atlanta, Ga., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This court has heretofore held that the White patent, No. 1,076,617, is valid and had been infringed by appellees. 19 F.(2d) 860. Writ of certiorari has recently been denied by the Supreme Court. 48 S. Ct. 141, 72 L. Ed. ——. An accounting remains to be had, and, to avoid this, appellees have filed here a petition for leave to make application to the District Court for a rehearing in the nature of a bill of review upon the question of the validity of the patent. The petition before us is based on the ground of newly discovered evidence, which it is insisted shows that White was not the inventor of the patented device, but, on the contrary, appropriated the new conception embodied therein from a drawing that had previously been made by one Edward G. De Wald. It alleges that the decree was obtained by fraud of which appellees were ignorant, and which in the exercise of reasonable diligence they could not have discovered before or during the trial.

By an amended petition appellees allege that the Allis-Chalmers Company, one of the

appellants, is misusing the decision of this court in the main case, in that it is representing to prospective contractors for turbine scrolls or casings that the opinion therein rendered construes the patent as being sufficient to include turbine scrolls made in sections of plate steel, even though such scrolls are in substantially true torus form, and is threatening prospective purchasers of such scrolls with suits for infringements, and also with injunctions. The amended petition prays that the Allis-Chalmers Company be enjoined from making such use of that decision. Affidavits were submitted to the following effect, in support of the averment that De Wald, and not White, conceived the central idea of the invention embodied in the patent:

Two drawings were made in 1906 and one in 1910, and submitted to contractors which contemplated the use of casings made of steel plate, but the drawings were not used, and there is nothing to show that White had any knowledge of them. In the summer of 1907 the Washington Water Power Company requested the Platt Iron Works Company to submit plans for a proposed power house on the Spokane river in Washington. Plans were submitted to De Wald, who at that time was hydroelectric engineer for the Platt Company. De Wald made a drawing showing plate steel scroll casings, but of rectangular cross-sections. Objection was made to that construction on the ground that varying water pressure would cause flexing or "breathing" of the casings, which would result in loosening the riveted joints, thereby causing leakage. De Wald then suggested that the scroll casings be made circular in cross-sections, as are the casings in the patented design. White, who at that time was employed as engineer by I. P. Morris & Co., was also asked to submit plans and called on the water power company in September. On October 8, 1907, the water power company wrote to White and inclosed a rough sketch, which De Wald claims contemplated the use of sections of steel plate. That letter also stated that De Wald was in Spokane and expected to leave suggestions upon different plans upon which he had been working. C. S. McCalla, assistant manager of the water power company, corroborates De Wald's statement, and further says that in September he discussed with White the use of circular spiral plates of steel which had previously been suggested by De Wald.

In an affidavit in opposition to the petition, White denied that McCalla or any one else connected with the water power com-

pany discussed with him the use of circular plates of steel. He admitted the receipt of the letter of October 8, 1907, but claimed that the drawing contemplated the use of cast metal casings, which it is admitted was well known in the art. He testified at the trial in the District Court substantially to the same effect, and further that in November of that year he submitted a drawing calling for spiral casings made of steel, but that he withdrew the plans because he was not satisfied that they could be successfully used. It is now claimed by appellees that De Wald also submitted plans which called for circular steel casings. Finally the water power company installed the well-known cast metal casings in its plant.

This suit was filed in February of 1925, and the trial was begun on December 15, and finished on December 21, 1925. In the meantime, on May 27, appellees propounded interrogatories to White, and in answering them he stated that he conceived the invention of the patent on or about July 26, 1912. Appellants excepted to the interrogatories, and in doing so made the statement that they would not attempt to antedate any of the patents relied on by appellees to show the state of the prior art, one of which was as recent as December, 1908.

In October appellees took the deposition of H. B. Taylor, formerly in the employ of the Morris Company, who produced a copy of a drawing made by White for the water power company in 1907, and then applied to the court to postpone the trial in the case, on the ground that it was believed that the engineers of the water power company might have some knowledge in regard to the origin of the design submitted in 1907 by White for the Morris Company. Appellants opposed postponing the trial by affidavit in which it was stated that they did not intend to dispute the facts brought out by the Taylor deposition. The files of the Morris Company were made available for inspection to appellees in October, and the letter of October 8, 1907, which transmitted the De Wald drawing to White, was used in the original trial as a basis for the inference that White was not the original inventor of the patented device in suit.

At the trial White admitted that one of the plans he drew for the water power company called for a steel plate spiral casing, but that he abandoned it because angles would be formed in putting the sections together, whereas it had theretofore been supposed that it was essential to have the surface of the casings smooth, so as not to interfere

with the flow of water, and that he did not seriously entertain the idea embodied in his patent until July, 1912, when he suggested it for use in a plant to be constructed in Tennessee.

Appellees did not use De Wald or McCalla, or any of the officers of the Washington Water Power Company, as witnesses at the trial, although De Wald in his affidavit says that since the year 1919 he has been connected with the appellee S. Morgan Smith Company. The patent was issued to White on October 2, 1913. As stated in the opinion in this case: "The issue of the patent was soon followed by an extensive use of the patented type of casing, that the use of such casings has steadily increased, and that for heads of 30 feet and more the type of casing disclosed by the patent has practically supplanted the types formerly in use."

The only evidence in support of the amended petition is that the Allis-Chalmers Company, in reply to an inquiry, refused to interpret the decision of this court, but, on the contrary, left the party who made the inquiry to draw its own conclusion from a copy of the opinion.

[1, 2] Appellees have the burden of showing that the newly discovered evidence they desire to introduce is material, and could not have been discovered at or before the trial by the exercise of due diligence. In cases of this kind, it is well settled that leave of the appellate court for permission to apply for a rehearing in the trial court will not be granted unless the newly discovered evidence is so persuasive as that it probably would induce a conclusion contrary to that on which the decree is based. Lafferty Mfg. Co. v. Acme Ry., etc., Co. (C. C. A.) 143 F. 321; Eclipse Machine Co. v. Harley-Davidson Motor Co. (C. C. A.) 286 F. 68; Carson v. American Smelting & Refining Co. (C. C. A.) 11 F. (2d) 766.

The question whether White was the original inventor was much in dispute in the original trial. The oral testimony, which it is now desired to offer, is of little, if any, value, because it undertakes to revive recollection of events that occurred 20 years ago. The Barbed Wire Patent Cases, 143 U. S. 275, 12 S. Ct. 450, 36 L. Ed. 161; Eibel Co. v. Minnesota, etc., Paper Co., 261 U. S. 45, 60, 43 S. Ct. 322, 67 L. Ed. 523. The fact that drawings were made in 1906 and 1910 is of no consequence, since it is not shown that they were used, or that their existence was ever brought to the notice of the inventor. Clark Thread Co. v. Willimantic Linen Co., 140 U. S. 481, 489, 11 S. Ct. 846, 35 L. Ed.

521. See, also, Automatic Weighing Machine Co. v. Pneumatic Scale Corporation (C. C. A.) 166 F. 288, 295; Minneapolis, etc., Ry. Co. v. Barnett (C. C. A.) 257 F. 302, 312. The theory of appellees is that De Wald made a drawing which to a mechanical engineer suggested the device which White patented, and left that drawing with McCalla, who subsequently, on October 8, 1907, inclosed it in a letter to White.

In support of that theory it is pointed out that within a few weeks White submitted a plan, which in substance embodied the plate steel construction represented by his patent. White admits that he received the drawing, but says that it indicated to his mind a construction of the heavy cast metal casing then in common use, and not that the use of a plate steel casing was intended, and that he abandoned his own plan of the lighter plate steel casing because he was imbued with the idea then prevailing that the casing should have a continuous rounded and smooth surface.

[3] Assuming that this documentary evidence is material, it is apparent that by the exercise of due diligence it could have been easily obtained by appellees in time to be submitted at the trial. The contention is untenable that appellees were injured by relying upon the statement of appellants that they would not deny that White made the drawing produced by Taylor, or undertake to claim that he conceived his invention prior to December of 1908. White admitted at the trial that he made the drawing produced by Taylor, and contended then, as he does in his affidavit now, that he did not perfect his invention until in 1912, when for the first time he conceived the notion that a smooth surface in casings was not indispensable, but that circular steel plates with angles could be successfully used, and that the cheapness of their construction would make them preferable to the type of heavier casings, constructed of cast iron or concrete, which theretofore had been almost exclusively used.

The patented device, in view of the fact that it almost immediately supplanted casings of the old type for heads upward of 30 feet, must have become quickly known to appellees. That it did so become known is practically demonstrated by the record in this case, which shows the expensive methods adopted by them to evade infringement. It is not contended, and indeed it is inconceivable, that De Wald, who claims to have anticipated White, and who, long before and during the period of this litigation was employed by one of appellees, remained in ignorance of the new type of construction.

He was in a position at the trial to have given any testimony which he could now give. It is not reasonably to be assumed that he would sit quietly by for years and allow another to reap the benefits of his invention. It is also true that before the trial appellees had in their possession the letter of October 8, 1907, and could have communicated with the officers of the Washington Water Power Company who dealt with De Wald and White.

Nothing that appellants did or represented could have misled appellees. Whether White was the original inventor has been from the beginning a vital issue in the case. Under these circumstances, we are not of opinion that the so-called newly discovered evidence ought to bring about a different result from that already obtained in the trial court. A sufficient showing has not been made in support of the amended petition to authorize the relief prayed. Affidavits in support of that petition do not in any way overcome the answer of appellants to the effect that they merely declined to give advice or construe the opinion of this court.

The petition and amended petition, and the prayers of each, are denied.