## TRAVELERS' INS. CO. OF HARTFORD, CONN., v. PERSON (PERSON, Intervener).

### No. 9244.

Circuit Court of Appeals, Eighth Circuit.
April 13, 1932.

Frederick M. Deutsch, of Norfolk, Neb., for appellant.

C. J. Garlow, of Columbus, Neb., for appellees.

Before STONE, and KENYON, Circuit Judges, and CANT, District Judge.

STONE, Circuit Judge.

Appellant issued an accident insurance policy to Rudolph C. Person. Insured began an action for payments due because of total disability. Before trial, insured died. His administrator was substituted and continued the action for the disability payments. The death beneficiary intervened to recover the payment due on account of death. There was a verdict and judgment according recovery to both. The insurance company brings this appeal.

The accident occurred September 17, 1927. The insured died September 24, 1930. The policy insured "against loss resulting from Bodily Injuries, effected directly and independently of all other causes, through accidental means. * * * " The policy provision as to total disability was: "If such injuries, independently and exclusively of all other causes, shall wholly and continuously disable the Insured from the date of accident from performing any and every kind of duty pertaining to his occupation, the Company will pay, so long as the Insured lives and suffers such total disability, weekly indemnity at the rate hereinbefore specified."

The provision as to death was that, "If such injuries shall wholly and continuously disable the Insured from the date of accident from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous disability but within two hundred weeks from date of accident, shall result independently and exclusively of all other causes in" death, a payment of $6,000 would be made to the beneficiary.

The errors urged here are of two kinds. The first challenges the sufficiency of the evidence. The second has to do with rulings upon the admission of evidence.

### I. Sufficiency of Evidence.

The challenge of the sufficiency of the evidence is twofold: First, that the evidence did not show that the injury was effected directly and independently of all other causes through accidental means; second, that the injury was not shown to have been a continued disability from the date of injury.

*Accidental Injury.* The occurrence and character of the accident is revealed in the evidence with no material dispute, and was as follows: Insured was riding in the rear seat of an automobile which, while going about thirty miles an hour, struck a defective place in a culvert causing insured to be thrown upward from the seat, his head striking a crosspiece in the car top so violently that it broke the flesh making a bloody wound and leaving a permanent scar and bump. This was the only place insured was struck.

The injury complained of was to the right side of his neck and developed into a sarcoma which resulted in death about three years later. The contentions of appellant are (1) that there was no evidence that the blow on the head caused the sarcoma, and (2) that the sarcoma was already in existence at the time of the accident, or, at the very least, it was such a doubtful matter that there was a failure of proof that it had been caused by the accident.

Appellant contends that the evidence of all of the medical experts was to the effect that traumatic sarcoma could be caused only by a blow or violence at the place where the sarcoma might later develop, and that the only direct blow here was to the top of the head. The medical evidence revealed that the causes of sarcoma were both known and unknown; that one known cause was trauma; that it was a more or less accepted belief that there must be a direct bruise or wound at the point where the sarcoma later appeared. Several medical witnesses testified that this accident had, in their opinion, caused this sarcoma. Others testified, in their opinion, it could not have done so. The evidence is overwhelming that on the day of the accident insured complained principally of injury to his neck; that this continued to be the main seat of trouble, and that it was that injury which was treated. From the first, his neck was stiff and sore and he complained that he could not move it and the pains there increased. Ten days later, the glands on the right side of the neck became enlarged. Later, a secondary enlargement occurred. This enlargement increased. Under treatment, it partially subsided. Thereafter, it grew larger and spread, resulting in partial paralysis of the right side of the face. In the face of this testimony, the jury could hardly have avoided the conclusion that there was an injury to the neck from the accident, and that there was a direct connection between that injury to the neck and the resultant sarcoma. The medical testimony, by no means, prevented such a conclusion. When something unusual interrupts the current of events and something unusual closely follows, there is nothing unreasonable in believing that the one followed because of the other. Medicine is not an exact science. This medical testimony is that the causes of sarcoma are known only in part. Medical expert theories or beliefs are not permitted to conclusively contradict a sequence of evidentiary facts which

show an apparent cause and effect. Such expert testimony may be very helpful to juries in understanding the meaning of the evidence before them and in enabling them to reach a proper and intelligent verdict, but they go no further than being advisory. If a man drops dead immediately after being struck in the face, no amount of medical testimony can compel the conclusion of a court or jury that the blow did not or could not cause the death. The injury to the top of the head here probably had nothing whatever to do with the sarcoma, but the evidence clearly shows that there was an injury to the neck when this 218-pound man was suddenly and violently thrown head first against the top of this car.

As to the contention that the sarcoma existed at the time of the accident: There was evidence of a doctor who had treated insured for an enlargement "about the size of a dollar" from July 2 until September 1 (the accident occurring on September 17); that the enlargement was on a scar, and that the sarcoma appeared later at that place on the scar. As to whether this enlargement had anything to do with the sarcoma, he testified: "Not to my knowledge." "I do not know whether it had anything to do with the sarcoma." He did not treat insured after the accident, except the day following, but saw the sarcoma a month after it developed. Other witnesses (including a doctor who treated him) testified the sarcoma growth was not at the place of the scar. There is also testimony by several witnesses that the enlargements which resulted in or indicated the sarcoma did not appear until ten days after the accident. Blood tests made six weeks after the accident showed a healthy condition. The blood examiner stated: "His history suggests a possible lymphadenitis [inflammation of the lymphatic glands], although one must keep in mind a malignant change." The jury were justified in concluding that there was no connection between the enlargement treated before the accident and those appearing after the accident. At least, this was a matter to be determined upon conflicting testimony.

*Continuous Disability.* In order for the administrator or the intervener to recover, the policy required that the injury to insured "shall wholly and continuously disable the insured from the date of accident from performing any and every kind of duty pertaining to his occupation," which was that of "automobile salesman, demonstrating, not repairing or racing." The evidence as to this disability is conflicting. Probably, the weight of the evidence favors the existence of continuous disability. At any rate, there was much substantial evidence from which the jury might well find such existence.

We think the sufficiency of the evidence to warrant submission to the jury is clear.

## II. Rulings on Evidence.

■ Appellant claims error in permitting Dr. Martyn to answer the question "Now then, doctor, you heard the deposition of Mr. Person and the testimony of Mr. Henderson as to how this accident occurred. State what in your judgment caused that condition that existed on Rudy's neck as you found it?"

Dr. Martyn had examined insured, professionally, the day after the accident. At that time insured complained of stiffness of his neck and pain. The doctor found the muscles of his neck stiff and a "mark" on the top of his head. There was no "glandular enlargement on that day." Insured returned ten days later when he had "enlargements of the glands of the neck." The doctor gave him X-ray treatments commencing shortly afterwards. The enlarged gland was "followed by a secondary enlargement which appeared below the ear. The first enlargement was near the angle of the jaw or on the right side of the neck." The doctor examined his blood and found it pure.

The testimony of Person (the insured) and of Henderson (driver of the car) which was intended to be covered in the question was solely that concerning the way in which the accident in the automobile had occurred. Appellant's contention is that this question was improper because the matters contained in the testimony of Person and of Henderson should have been hypothetically stated and because the answer called for involved an opinion upon all the evidence as to the cause of the injury which was a "final inference" for the jury to draw. The testimony in question was brief and clear that the insured had been thrown from his seat, and that the top of his head struck the car top with sufficient violence to cause a considerable scalp wound. The jury as well as the witness could not have been mistaken as to just what definite facts were incorporated by the reference in the question. It is not erroneous to permit an attendant physician to state that, in his opinion, an injury shown in the evidence caused a condition he observed and treated.

■ Another challenged ruling on evidence is a question asked Dr. Martyn, as follows: "From this statement of Dr. Roeder's, doctor, what would you gather as to his opinion of Rudy's condition as to whether it was

developing into a sarcoma or would become malignant and end in sarcoma or otherwise?"

The statement of Dr. Roeder referred to was a written report from him to Dr. Martyn upon an examination of insured by Dr. Roeder made at the request of Dr. Martyn. The contention is that an expert may not express an opinion upon the opinion of some other person. As a bare rule of law, this is not true. Whether such an opinion may be called for, obviously, depends upon the purpose of the question and the circumstances of the inquiry. Here the purpose was to elicit an explanation of the meaning of the report. Ordinarily, the jury should be left to draw its own conclusion as to such meaning, but it is a matter of discretion in the trial court to permit such inquiry where that court deems such helpful to the jury. Here we find no abuse of this discretion. It may be added that no possible prejudice could have resulted from the question and answer thereto.

■ Another assignment as to evidence is as to the following:

"Q. 'Doctor, without telling what you may state whether or not Rudy gave you a history of his accident and condition up to the time you saw him?' A. 'He did.'

"Q. 'And it was from that history and your own observation that you have based your testimony in this case?'

"Mr. Deutsch: 'Objected to as incompetent, irrelevant, immaterial and not basing it entirely upon a hypothesis presented to him.'

"The Court: 'Objection overruled.' (Defendant excepts.)

"A. 'It was.'"

The contentions are that "the facts upon which an expert bases his opinion must first be detailed by him so that the court and jury may determine whether the alleged facts on which the conclusion are based, are real, and whether they justify the conclusion or opinion expressed"; that "a declaration merely narrative of past occurrences, except when received by a physician as necessary to diagnosis, is inadmissible"; and that "a physician may not give his opinion of the cause of an injury, based upon the 'history' of the case as given him by the patient." The question objected to had reference solely to testimony theretofore given by the witness. Whether a motion to strike out this earlier testimony, made after the answer to this question, should have been sustained, is not before us, and we suggest no determination thereof. The matters now urged would be pertinent in connection with such a motion, but no such motion

was made. These contentions and the objection and ruling to which they are directed refer wholly to the question. Obviously, it was proper for the witness to state that he had based the testimony, already given, upon the history of the case and his own observations. The court and jury were entitled to know the bases of his stated conclusion.

■ During the cross-examination of the mother of the insured, occurred the following:

"Q. 'You know that he drew a pay check on the 26th of September, 1927, from the Rohner Motor Company for salary for the immediately preceding week, do you not, Mrs. Person?'

"Mr. Garlow: 'That is objected to as improper cross-examination and immaterial.' (Objection sustained. Defendant excepts.)"

The exclusion of this evidence is urged as error. It was error since a part of this check purported to cover services of insured for about a week after the accident; such evidence was pertinent to the issue of continuous disability, and the witness, on direct examination, had testified that the insured did not work after the accident. However, the error was harmless, as the check itself was introduced, upon identification of an officer of the motor company, and the indorsement thereon of the insured was identified, by the father of the insured, as that of his son. The officer of the company testified:

"A day or so after the accident Rudolph C. Person stated to me that he didn't feel like working.

"Q. 'And he did not work any more after that, did he?' A. 'He didn't accomplish anything.'

"He told me a day or so after the accident that he wasn't able to work and he did not work any more. He complained to me that he was in pain and got badly hurt. I presume the check, dated September 26, 1927, was simply given because we considered him in our employ until that time. He didn't work any more."

In this situation of the evidence, it was not reversible error that the mother was prevented from testifying whether she knew insured had received this check.

■ Appellant placed Dr. Schaefer on the stand and inquired concerning osteopathic treatments he had given insured between July 2 and September 1, 1927 (the accident occurred September 17), for an enlargement of the right side of the neck. On cross-examination appellees had the witness locate the posi-

tion of this enlargement as being over a scar (which was different from the place where the testimony of appellees located the enlargement appearing after the accident). Immediately thereafter, occurred the following:

"Q. 'And that had nothing to do with the sarcoma which developed afterwards?'

"Mr. Deutsch: 'Objected to as not proper cross-examination.'

"The Court: 'Did you see the sarcoma which developed afterwards, Doctor?'

"The Witness: 'A month after.'

"The Court: 'Well, you may answer the question.' (Defendant excepts.)

"A. 'Not to my knowledge.'

"On Redirect Examination by counsel for defendant this witness testified as follows:

"I do not know whether it had anything to do with the sarcoma. It was in the same location as the beginning of this sarcoma. It was below the ear. 'The lump was right on this scar from a former operation an inch to an inch and a half below the right ear.'"

It is obvious that the only purpose of the direct examination was to show a direct connection between this enlargement (prior to the accident) and the enlargement and resultant sarcoma after the accident. Such is the argument here in respect to the sufficiency of the evidence. The question objected to bore directly upon that very matter. Also, the answer, when taken in connection with the redirect examination, amounted to no more than that the witness did not know.

Another claimed error is the exclusion of a signed statement made by the witness L. L. Rohner. On direct examination he had identified the pay check, referred to above. Upon cross-examination, he had testified as quoted above. Upon redirect, he identified a signed statement made by him to appellant on November 25, 1930. He was examined as to the part of the statement contradictory to his cross-examination. Thereafter, the statement was offered, and objection thereto that it was in impeachment of appellant's own witness was sustained. Under these circumstances, the court might well have admitted the statement. However, the substance of the statement as to the matter involved was brought out fully in the redirect examination, and, being thus before the jury, no serious prejudice could have resulted from the exclusion of the statement itself.

The final contention is claimed error in denying a new trial because of newly discovered evidence. This new evidence consisted of a written statement made to appellant by Dr. Martyn, and the use which appellant designed to make of this statement on a retrial was to impeach one feature of the testimony of Dr. Martyn. In view of the legion of cases holding that action on a motion for new trial is discretionary in the trial court and not subject to review, this contention is readily denied. Even if a review were allowable on the ground of newly discovered evidence, this contention would be unsound for two reasons. First, it is not newly discovered, having been known to and in possession of appellant before the trial. The statement that it was displaced at the time of trial does not alter this situation. Second, the intended use is solely for impeachment and a denial of a motion for new trial in such a situation is no abuse of discretion.

The judgment is affirmed.