## HAGEROTT v. ADAMS.

### No. 9833.

Circuit Court of Appeals, Eighth Circuit.
March 16, 1934.

Rehearing Denied May 9, 1934.

See, also, 61 F.(2d) 35.

John Roland Ware, of Minneapolis, Minn., for appellant.

Harold S. Davis, of Boston, Mass. (Alfred Zuger and B. F. Tillotson, both of Bismarck, N. D., and Robert G. Dodge, of Boston, Mass., on the brief), for appellee.

Before GARDNER and WOODROUGH, Circuit Judges, and MARTINEAU, District Judge.

WOODROUGH, Circuit Judge.

The appellant is the administrator of the estate of one A. D. Gaines, formerly resident in Sanger, Oliver county, N. D., who died in July of 1927. The appellee, Wilman E. Adams, is the nephew of the deceased. In 1920 Mr. Gaines delivered about $75,000 worth of shares of corporate stock to his nephew, Mr. Adams, and gave him a conveyance in trust covering the shares of stock, providing that the dividends and proceeds should go to Mr. Gaines during his lifetime, then to Mr. Adams for the term of his life, then the corpus to the Boston Y. M. C. A., to become a part of the permanent endowment fund of that organization. Thereafter, and up to the death of Mr. Gaines, the dividends from the stocks were applied conformably to the trust agreement, being paid first to the trustee, Mr. Adams, and by him delivered to Mr. Gaines. After the death of Mr. Gaines, the shares of stock were found among his effects, and they were taken over by the administrator and claimed by him for the estate of Mr. Gaines. Mr. Adams brought suit in equity in the federal District Court of North Dakota against the administrator to obtain the stocks and dividends in accordance with the trust document. After trial, the District Court refused the relief and dismissed the bill. An appeal was taken from the decree to this court.

On the appeal in this court the contention of the administrator was that Mr. A. D. Gaines had never divested himself of the shares of stock in question or made any gift thereof in trust or otherwise, but that he had put the shares in the name of his nephew on the books of the issuing corporations and executed the trust conveyance solely as a device to cover up the property and conceal the fact of his ownership therein from possible creditors and claimants, and that the transactions were mere sham. The nephew denied that the transactions were sham, and insisted that they reflected the true intent of the parties at the time. As the suit was in equity, this court made its own study of the voluminous evidence, and decided that the evidence did not justify a holding that the transactions were sham. It reached the conclusion that the gift of stock in trust to the nephew for the uses specified in the trust conveyance was valid and effective to give Mr. Gaines a beneficial interest in the income during his lifetime, the nephew, Mr. Adams, the use during his lifetime, and the corpus thereafter to the Boston Y. M. C. A. to become a part of the permanent endowment fund of that organization.

The statute of North Dakota prevented the nephew, Mr. Adams, from giving his testimony, and the lips of Mr. Gaines were sealed in death. This court, not unnaturally, commented that several obscure points would doubtless be cleared up if we could have the testimony of the two parties directly involved in the transactions. Not having such testimony, it was possible to draw different conclusions as to the ultimate fact of intention on the part of Mr. Gaines; but, upon careful consideration of all the evidence, the unanimous conclusion of the court was clearly stated with finality. No motion for rehearing having been made, mandate was issued to the trial court, and the same has been complied with and the judgment satisfied.

Shortly after the decision in this court, the son of Mr. Gaines employed other counsel to discover if some form of supplementary bill might be filed for a review of the case, and very diligent effort has been made to that end. On showing made to this court that there was newly discovered material evidence, this court granted permission to the administrator to file in the District Court of North Dakota a petition for leave to file a bill of review, seeking a new trial of the case.

Such application supported by affidavits was duly filed in the District Court, and, counter showing having been made by the nephew, Mr. Adams, the controversy as to whether a bill of review should be allowed came on to be heard before District Judge Joseph W. Molyneaux, then assigned to the district of North Dakota.

It is contended for appellant that, as the showing which was made to this court on the application for permission to file the motion in the District Court was the same showing as that presented to Judge Molyneaux, Judge Molyneaux ought not to have exercised his independent judgment on the merits of the motion, but was bound by the order of this court to grant leave to file the bill of review. We think otherwise.

Doubtless this court could have adjudicated finally upon the sufficiency of the showing to require the granting of leave to file the bill of review because in this case the decree sought to be opened up is really the decree of this court based upon its own findings and reversing the trial court's decree. Obear-Nester Glass Co. v. Hartford-Empire Co. (C. C. A.) 61 F.(2d) 31. But in this court the practice is in the same state as described by the Circuit Court of Appeals of the Sixth Circuit in Keith v. Alger, 124 F. 32, 33: "In respect to the extent of the inquiry which the appellate court will make upon the presentation of such a petition, the practice has been somewhat elastic, and seems to have been regarded as in some measure a matter of convenience, and we find that often in the same court different courses have been pursued. * * * It seems anomalous that the decree of an appellate court should in any case be subject to the discretion of the lower court, but it is settled by long practice that the appellate court may delegate its authority to the lower court if it finds it expedient to do so."

Accordingly, this court, though it did not issue its order as a matter of course, but upon consideration, did not adjudicate on the merits, but, by the form of its order, delegated to the District Court of North Dakota the function of hearing the testimony, passing thereon and deciding whether or not a bill of review should be allowed, and that court properly tried the matter de novo.

The record discloses that the alleged newly discovered evidence relied upon for a new trial consisted of nine letters passing to and from Mr. Gaines and the oral testimony of C. B. Little, William M. Kiebert, and J. R. Dowell, none of which evidence had been adduced at the original trial of the cause; and that Judge Molyneaux weighed the new evidence in relation and comparison with all that had been heard before, the result of his study being incorporated in his decision and order extending over some twenty-five pages of the printed record. He correctly announced the rule of law as to the quantum of new evidence necessary to justify the relief as follows:

"If a case is doubtful, it is not enough for a party seeking to file a bill of review to merely increase the doubt by the proposed new evidence.

"The new evidence must satisfy the court that if the bill of review were filed the result would affect the decree which had been rendered." Carson v. American Smelting & Refining Co., 11 F.(2d) 766 (C. C. A. 9); Deppe v. Gen. Motors Corp., 52 F.(2d) 726 (C. C. A. 3); Rown v. Brake-Testing Equipment Corp., 50 F.(2d) 380 (C. C. A. 9); Allis-Chalmers Mfg. Co. v. Columbus Elec. & Power Co. (C. C. A.) 22 F.(2d) 737; Lafferty Mfg. Co. v. Acme Ry. (C. C. A.) 143 F. 321; Eclipse Machine Co. v. Harley-Davidson Motor Co. (C. C. A.) 286 F. 68.

He digested the pleadings and the evidence upon which the case had been tried originally and the findings and decision of this court as set out in the opinion handed down September 18, 1929, and published in 34 F.(2d) 899, 900. To make this opinion intelligible, it may be noted briefly that in that opinion this court had found, among other facts appearing in evidence, that the relations of Mr. Gaines with his nephew, Mr. Adams, were of the closest, "he was very fond of him and seemed to depend upon him a great deal," "he thought the Y. M. C. A. was a wonderful institution and did a great amount of good in the world and that he was glad to have a nephew engaged in that work"; that Mr. Gaines made repeated statements over a long period of time that he intended to make his nephew, Mr. Adams, and the Y. M. C. A. at Boston recipients of his bounty; that he placed the certificates of stock in controversy in the name of his nephew, Mr. Adams, on the books of the respective corporations; that he delivered the stock certificates to Mr. Adams in 1920; and that he made repeated statements to several of his relatives as late as 1926 that he had made a gift of the stock to Mr. Adams for life, remainder to the Y. M. C. A., with reservation to himself of the income during his lifetime; that he executed and delivered to Mr. Adams the trust document set forth in the

opinion, which recites specifically the terms of the trust; and that Mr. Adams, the nephew, collected the dividends on the stock from March, 1920, to the time of Mr. Gaines' death in 1927; and that Mr. Adams paid over the dividends so collected to his uncle, Mr. Gaines. And the decision of this court was that an intention on the part of Mr. Gaines to make a gift of the stock was competently evidenced and such gift was made and it was valid and binding. ·

On the other hand, the opinion pointed out that there were facts from which it was possible to draw a different conclusion as to the ultimate fact of intention on the part of Mr. Gaines. Mr. Gaines was troubled both on account of fear that certain land operators would get judgment against him and take away some of his property and also had apprehension that his wife might get a divorce and obtain a considerable portion of his property. Mr. Gaines told a Mr. Wold of his troubles and that he desired to protect his property on account of his boy, and that he wanted to place stock in Mr. Wold's name to be held. Mr. Wold refused to carry out the suggestion, and Mr. Gaines said he had a nephew that he could probably use for that purpose. A somewhat similar talk was had by Mr. Gaines with one H. H. Chamberlain. Mr. Gaines also told his sister, Mrs. Davis, that he wished to put part of his property out of the reach of his wife and of the land operators with whom he was having trouble. Mr. Gaines frequently expressed to Mr. Charles F. Davis, his brother-in-law, a fear that his wife or these Western land people might get all of his property or part of it away from him. And summarizing these facts, this court found that Mr. Gaines had motives for placing the certificates of stock in some name other than his own quite apart from any motive of making a gift in trust, and it noted also the important circumstance that, directly after the certificates were delivered to the nephew, Mr. Adams, they were indorsed by him to Mr. Gaines and delivered back, and remained in Mr. Gaines' possession until his death.

After digesting the opinion of this court more elaborately than the foregoing, Judge Molyneaux took up "the proposed new evidence with respect to Mr. Gaines' intent in transferring the stock to Adams." No newly discovered evidence was offered tending to controvert the testimony on which this court had found that Mr. Gaines had affectionate interest in his nephew and a desire to make the nephew and also the Y. M. C.

A. at Boston the objects of his bounty, nor to controvert that Mr. Gaines had delivered the stock to his nephew, had executed the written declaration of trust to him set out in full in this court's opinion, nor to controvert that Mr. Gaines had permitted the dividends of the stock to go in accordance with the terms of the trust document throughout the remaining years of his life; nor to controvert the declarations of Mr. Gaines to the effect that he had intended to accomplish those purposes and had done so. But Judge Molyneaux found in the newly discovered evidence "testimony as to statements alleged to have been made by Mr. Gaines with respect to the transfer in question." He found that such statements had been made to one C. B. Little and one William M. Kiebert, newly discovered witnesses who had not been called on the original trial of the case. It appeared that Mr. Gaines told Mr. Little that he proposed to put some of his stock out of his name as owner and in the name of some reliable person who could hold the title for him in order to protect himself against attacks, and afterwards that he had conveyed the title to the stock to his nephew and that he had safeguarded himself in the conveyance and that the stock belonged to him. It appeared further that Mr. Gaines also told Mr. Kiebert that he thought it best to have part of his property where no one could beat him out of it, and that he had made over certain of his stocks to his nephew, Adams, in Vermont for safe-keeping and could get them any time he wanted them. Summarizing upon the proposed testimony of Mr. Little, Judge Molyneaux, among other things, commented: "The truth of that testimony was not rejected by the Circuit Court of Appeals but was accepted as true and was reconciled, as it well might be, with the testimony of Gaines' relatives, to the effect that he had told them that he wanted to put the stock beyond the reach of his enemies, his wife and the land sharks of North Dakota, but that he also wished to carry out his long since entertained purpose of making a gift to his nephew and to the Y. M. C. A."

Judge Molyneaux also found that certain written correspondence had passed between Mr. Gaines and the Russell Grader Manufacturing Company, H. H. Chamberlain, president of Boyd Transfer & Storage Company, and the Northern States Power Company (the stock covered by the trust document being stock issued by those corporations), and that the letters had not been adduced at the original trial of the case. He examined each of the letters and fully digested the contents.

As to the four letters of dates in 1920, March 3, July 3, March 5, and November 3, respectively, Judge Molyneaux commented: "He (Mr. Gaines) had reserved the income from the stock to himself and was anxious to make arrangements that it be forwarded and that was the purpose of these letters."

As to the letters of dates in 1923, March 30 and April 3, respectively, after analyzing the same, the summing up comment of the court was: "Mr. Gaines was not trying (in these letters) to explain (by these letters) what he had done (about the disposition of his stock) in detail. He was simply trying to let the corporations know that he held the certificates and was entitled to the dividends." (Our parentheses.)

The proposed new witness Dowell was a private detective who shadowed and dogged the footsteps of Mr. Gaines at the wife's behest, and although, as Judge Molyneaux said, his testimony was not worthy of careful consideration, it was none the less carefully considered and analyzed by him and found not to be helpful to appellant. Judge Molyneaux also considered with painstaking care the charge that some of the newly discovered evidence had been secreted and kept from the knowledge of the trial court and the appellate court, concluding that the charge of sharp practice in that regard had not been sustained. After full hearing of all testimony adduced and arguments of counsel and time taken for deliberation, Judge Molyneaux decided "the affidavits filed and the new evidence offered have failed to satisfy me that if the bill of review were filed the result would affect the decree which has been rendered." He therefore ordered that the motion for leave to file a bill of review be denied.

This appeal is taken to reverse that order on the ground that it is unsupported by the evidence; is contrary to law; and there was abuse of discretion.

 Proceedings to open up a judgment by bill of review on the ground of newly discovered evidence are analogous to motions for new trial on the same grounds. Such a proceeding is not founded in a matter of right, but rests in the sound discretion of the trial court. "Matters resting in the discretion of a subordinate court cannot be assigned for error in an appellate court." Steines v. Franklin County, 14 Wall. (81 U., S.) 15, 22, 20 L. Ed. 846. See, also, Thomas v. Brockenbrough (Harvie's Heirs), 10 Wheat. 146, 6 L. Ed. 287; Ricker v. Powell, 100 U. S. 104, 25 L. Ed. 527; Hopkins v. Hebard, 235 U. S. 287, 35 S. Ct. 26, 59 L. Ed. 232; National Brake Co. v. Christensen, 254 U. S. 425, 41 S. Ct. 154, 65 L. Ed. 341; Swift v. Parmenter, 22 F.(2d) 142 (C. C. A. 8); Travelers' Ins. Co. v. Person, 58 F.(2d) 210 (C. C. A. 8); Obear-Nester Glass Co. v. Hartford-Empire Co., 61 F.(2d) 31 (C. C. A. 8). Where, as in this case, a long and costly litigation has been carried through to a final conclusion in the Circuit Court of Appeals, nothing could justify upsetting the solemn judgment of the court years afterwards and reopening the litigation short of the most positive, decisive, and convincing proof that injustice had been done, and that, in spite of due diligence of the losing party, the court had been deceived in regard to the facts, and that new facts afterwards brought to light disclosed the injustice of the judgment. Not only did Judge Molyneaux find no such situation presented by the newly discovered testimony, but he found there was little therein to help the case of the losing party, and nothing to satisfy him that the newly discovered evidence would affect the result already reached in the litigation.

Through numerous assignments of error appellant contends that Judge Molyneaux held, in effect, that newly discovered testimony was insufficient as a matter of law to justify new trial on bill of review if it was cumulative; that such holding was contrary to law because the law recognizes the sufficiency of cumulative newly discovered evidence to justify new trial; that the mistake of law led to the decision; that there was, therefore, a misapplication of the law to the proposed new evidence, and such misapplication of the law constituted abuse of discretion. The real purpose is to have this court pass de novo on the alleged newly discovered evidence and the sufficiency thereof.

If it should appear in some case that a trial judge had newly discovered evidence before him which, in his opinion, was calculated to, and probably would, result in changing the judgment on a new trial, and if he should refuse to grant the new trial because the evidence was cumulative of some evidence already in the case, it might be that there would be a question of abuse of discretion reviewable here. We need not decide. It is evident that Judge Molyneaux characterized much of the newly discovered evidence in this case as "cumulative" because there is no other word of art available to the judges. For instance: On the first trial the witness Wold testified that Gaines wanted to put his stock in Wold's name to be held, and,

on Wold's refusal, Gaines said he had a nephew that he could use for that purpose. On the hearing before Judge Molyneaux, the new witness Little testified that Gaines had told him that he proposed to put the stock in the name of some reliable person who could hold the nominal title for him, and that he had been thinking of his nephew, Adams, of Boston. Naturally the trial judge, in making comparisons of the new testimony with the old, used the art words "cumulative testimony" a number of times throughout his decision. On the other hand, it is clear from his decision as a whole that he studied the old evidence and the new to determine whether there was any new evidence which would probably change the judgment if there was a new trial in which all the testimony should be brought forward, and he found there was not.

The appellant also contends that, as the intent of Mr. Gaines had been the main issue on the trial in this court, and that that intent had to be determined from circumstances, it was the duty of the trial judge under the law to add the newly discovered testimony to the old evidence and find whether the total would change the balance against the decree; that the trial judge misapprehended this law, and from this misapprehension an abuse of discretion resulted. As the trial court particularly laid the new testimony alongside of the old testimony and compared the total with the findings that this court had made, and by these very means assured himself of his conclusion, the contention of appellant appears to be without support in the record. The true intent of Mr. Gaines had to be drawn from what he did and said in establishing the trust in his nephew, Adams, and what he said about transferring the property to hide it from his wife, his enemies, and possible creditors. The record shows that it was the conclusion of the trial court that the new testimony, like the old testimony, went to prove the fact already accepted as true by the Circuit Court of Appeals and clearly expressed in its conclusion, that Gaines had a double motive in transferring his stock to his nephew. The record does not disclose the alleged misapprehension of law by the trial court. It does disclose most painstaking and careful study of all of the evidence, both the new and the old, and that the new evidence failed to satisfy the trial court that, if the bill of review were filed, the result would affect the decree which had been rendered.

The record does not disclose that the trial court proceeded under any misapprehension of the law or misapplied the law, and there was no such abuse of discretion as is sought to be presented by the assignments of error. This court is not required, therefore, to substitute independent conclusions of its own upon the sufficiency of the alleged newly discovered evidence for the conclusion announced by the trial court. The appeal presents only an attempt to review the ruling of the trial court on a matter addressed to the discretion of that court.

Such review is denied, and the order of the trial court is affirmed.